R K, McCONNELL and others *v.* S. W. CALDWELL, Adm'r. of JAMES McCONNELL and others.

Where it is alleged, in an action to have the intestate of the defendant declared a trustee of the plaintiffs of a certain tract of land, which said intestate had purchased, as was further alleged, with the means of his father, (also the father and grandfather of plaintiffs,) but took a deed in his own name and claimed the land as his own, the burden of proving the alleged facts lies with the plaintiffs.

In such action, upon the trial of the issue, whether fraud or undue influence was practiced by the intestate of defendant, in having the deed made to himself, the declarations of the father, with whose means the land was purchased, and who was in possession, made after the land was bought, that fraud and undue influence were used by his son, the said intestate, in getting the deed, are not admissible to prove such allegations.

ORIGINAL BILL in Equity, under our former system, filed at the Spring Term, 1861, of the Court of Equity for MECKLEN-

McConnell *et al. v.* Caldwell, Adm'r., *et al.*

BURG county, tried in the Superior Court of said county, at Spring Term, 1875, upon certain issues sent down from the Supreme Court, before his Honor, Judge *Schenck* and a jury.

The bill charges that James McConnell, the intestate of the defendant, Caldwell, and son of Thomas McConnell, Sr., purchased a tract of land from one Henderson, in the county of Mecklenburg, and paid for it with the money belonging to his father, and took a deed for the same in his own name; that the said James lived with his father, the said Thomas Sr., who was very old, and at the time of the purchase of the said land was much enfeebled in intellect and in his dotage, and that James, who was his youngest son, and had great influence with his father, prevailed upon the old man to sell his farm in Iredell, and pay for that purchased of Henderson, against his wishes and intentions. It is also charged in the bill, that James for a long time managed the business of the old man, cultivated the farm, and appropriated the products to his individual use. There are other allegations charging fraud and undue influence, and also others, in no way pertinent to the issues decided by the jury.

The answer admits the sale of the Iredell place and the purchase from Henderson of the plantation in Mecklenburg, and the part payment therefor with the note of the purchaser of the farm in Iredell. It is alleged in the answer, that his father had often before the said purchase declared, that he intended to give James the plantation, as in some degree, a payment for his services in working and taking care of the family—consisting of his father, an old man, an invalid sister, and a parcel of young negroes, too young to work; charging that the services of James, during a long period, were worth much more than all the money advanced to him by his father. The answer denies that the old man, Thomas, Sr., was imbecile or in his dotage, and charges that he was hale and vigorous for a man of his years, (seventy-four,) mentally and physically; it also denies that James practiced any fraud or used any contrivance or

undue influence in obtaining his father's consent to the transactions set out.

The defendant, Elizabeth, is the widow of James, and has had dower on the land purchased of Henderson; the remaining portion of said land has been sold by the administrator, Caldwell, under a decree of Court, for assets to pay debts.

The case being removed under the old practice to the Supreme Court, the following issues were ordered to be sent down to the Superior Court of Mecklenburg, to be tried by a jury:

(1.) Was the tract of land in Mecklenburg county, purchased from David Henderson, and the legal title to which was made to James McConnell, deceased, purchased with the money or means of Thomas McConnell, the elder, deceased, or any part thereof, and how much did the said Thomas McConnell pay?

To this the jury responded: " No.  Thomas McConnell, Sr., was due James McConnell the full amount for services."

(2.) Was said Thomas McConnell, at the delivery of said deed, incapacitated from doing any business?

This issue was abandoned by plaintiffs, who admit that he was not.

(3.) Was the said James McConnell at the time of the purchase of the land from David Henderson, and if before, for what length of time. the genuine agent of said Thomas?

To this the jury says, " No."

(4.) Did the said James McConnell, before, and at the delivery of the said deed, exercise undue influence over the said Thomas?

The jury finds that " he did not."

(5.) Did the said James agree to hold the said legal title in trust for the said Thomas?

Upon this issue, the Court charged the jury that there was no evidence to sustain this allegation, and directed an entry in the negative.

The evidence relating to the above issues, is reported at length in the statement of the case, but is omitted for the rea-

son, that so much thereof as bears upon the points decided in this Court, is fully stated, with the exceptions to its admission, by Justice READE.

Upon the hearing below, his Honor charged the jury, that if Thomas McConnell, Sr., paid the purchase money for the land, either in money or money's worth, it was a payment; but if James had worked for the old man, then the latter was indebted to the former; and if the payment to Henderson was intended to discharge that debt, it would be a payment by James. His Honor further charged, that the *onus* in regard to the alleged undue influence was upon the plaintiffs; and likewise as to the allegation that the defendants agreed to hold the land in trust for his father. But, that if the jury found that James was the general agent, and had the entire management of his affairs, it then devolved on the defendants to satisfy them of the *bona fides* of the transaction.

*McCorkle & Bailey* and *Jones & Johnston*, for complainants. *Wilson & Son* and *Dowd*, contra.

READE, J. This was a bill in equity before the Code, to have the intestate of the defendant declared a trustee for the plaintiffs, as heirs at law of Thomas McConnell deceased, of a tract of land, which, it is alleged, said intestate bought for said Thomas, and paid for with the money of said Thomas, but took a deed in his own name.

The burden of proving this was upon the plaintiffs. We think that the evidence fails to prove the allegation. And to aid us in coming to a just conclusion, we sent down issues to be tried by a jury; and the jury found all the issues against the plaintiffs. This put the questions beyond doubt.

It is, however, objected by the plaintiffs, that upon the trial of the issue, whether fraud or undue influence was practiced by the intestate of the defendant, he offered the declarations of the said Thomas made after the transaction, but when said Thomas was in possession of the land, that fraud and undue

influence were used—which declarations, he says, were competent, because Thomas was *in possession.*

It is true that what one in possession of property says as explanatory of his *possession,* and under certain circumstances as explanatory of his *title,* when he claims title, is competent. But here, the offer was not to prove that he claimed the title, but that he said that the intestate of the defendant had used fraud in getting the deed, not from him, but from Henderson. Now if such declarations would not have been competent if made when he was *out* of possession, it is difficult to perceive upon what principle his being *in* possession would make them competent. But however that may be, let it be taken as proved that said Thomas did say, after the transaction, that the intestate had practiced a fraud; yet the *bona fides* of the whole transaction is so satisfactorily proved, that such declarations would have but little influence with us.

In cases of this kind, the verdict upon the issues *aids* us, but does not *control* us. We are satisfied with the finding of the jury upon all the issues; and it ought not to have been different upon this issue, if the declarations had been let in.

There must be a decree for the defendant.

PER CURIAM.                     Decree accordingly.