CHARLES H. WESSELL and wife v. MARTIN RATHJOHN and wife.

*Jurisdiction—Deed of parent to child—Fraud—Undue Influence—Judge's Charge.*

1. The legislature has given to no court exclusive equitable jurisdiction, and whether this court has power to prescribe such a jurisdiction in pursuance of article four, section eight of the constitution, conferring jurisdiction over "issues of fact"—*Quære.*

2. A deed executed under undue influence will be rejected, such influence being fraudulent and controlling.

3. Where a father, having two daughters, executes a deed to one of them, though not founded upon adequate consideration, the deed will not be cancelled at the instance of the other daughter, unless actual fraud or undue influence be shown, and the burden to show such is upon the party alleging it. The law presumes such transaction to be proper, unless the contrary is shown. The relation of parent and child distinguished from that of guardian and ward, &c.

4. Where, in such case, after the death of the father, an action is brought by one daughter against the other (the grantee), demanding a cancellation of the deed and a division of the land, alleging that the same was executed under undue influence exerted by the grantee over the grantor, whose ill health had impaired his mind; and there was evidence not inconsistent with the integrity of the deed, the grantor having expressed himself satisfied with it; and the court charged the jury in substance that sufficient capacity must exist at the time of the act performed, otherwise the act would not be valid, although the party recovers such capacity, unless he afterwards acquiesced in the act or ratified it; *Held*, no error.

(*Leggett* v. *Leggett*, 88 N. C., 108 ; *Shields* v. *Whitaker*, 82 N. C., 516 ; *Lea* v. *Pearce*, 68 N. C., 76 ; *Wright* v. *Howe*, 7 Jones, 412 ; *Horah* v. *Knox*, 87 N. C., 483 ; *McConnell* v. *Caldwell*, 73 N. C., 338 ; *Rippy* v. *Gant*, 4 Ired. Eq., 443, cited and approved).

SPECIAL PROCEEDING commenced in the probate court and tried at Fall Term, 1882, of NEW HANOVER Superior Court, before *MacRae, J.*

This proceeding was instituted by the plaintiffs to obtain partition of certain lots in the city of Wilmington, of which John H. Heins is alleged to have died seized and possessed, and the *feme* plaintiff Anna S. Wessell and the *feme* defendant Margaret E. Rathjohn are his only children and heirs-at-law, and are jointly seized of the descended property.

In answer to the plaintiffs' petition, it is alleged that the *feme* defendant is the sole owner of the property under a deed from her father, and in reply the plaintiffs say that said deed is not the act and deed of John H. Heins, for the reason that at the time of its execution he was not of sound and disposing mind, and that the making of the same was procured by undue influence exerted by the *feme* defendant, and the plaintiffs therefore ask for a decree of cancellation and that the land be divided.

Thereupon the following issues were framed and submitted to the jury :

1. Was John H. Heins of such unsound mind, at the time of the execution of the deed, as to render him incapable of executing a deed ? Answer, No.

2. Did the *feme* defendant Margaret procure its execution by exerting an undue influence over her father, the said John H. Heins ? Answer, No.

The plaintiffs and defendants introduced a number of witnesses : the testimony of the former tended to support the allegation of a want of soundness of mind of the grantor, caused by protracted ill health ; and that of the latter, to support the contrary.

The plaintiffs requested the court to charge the jury, "that in

order to enable a man to make a deed of his property so as to pass the title, he must have sufficient mental capacity to understand the nature of the act in which he is engaged, in its full extent and effect, and this capacity must exist at the time of the act performed; if it does not then exist, the act would not be valid, although the party might thereafter recover such capacity." This was given, and His Honor added, "unless he acquiesced in it or ratified it afterwards," to which addition the plaintiffs excepted.    The substance of other instructions of the plaintiffs which were refused by the court below, is stated in the opinion of this court.

Under the charge of the judge, the jury responded to the issues as indicated above, and the plaintiffs appealed from the judgment rendered.

*Messrs. MacRae & Strange*, for plaintiffs.
*Messrs. E. S. Martin* and *Junius Davis*, for defendants.

MERRIMON, J.    1. The appellants insist in this court that this is a case exclusively within the equitable jurisdiction of the superior court, and, therefore, that court ought to have proceeded to hear and determine it as a case in equity; and they suggest that it be remanded with instructions to that court to so treat it.

We are not prepared to admit that this is a case exclusively equitable in its nature; but if it were, it appears that the appellants consented, first in the court of probate and afterwards in the superior court, to have the issues of fact arising in their action tried by a jury in the ordinary method of procedure. Equitable rights may be settled and administered, and actions purely equitable in their nature may be tried under this method, and when the parties choose at first to proceed in that way, they cannot afterwards, certainly not without the common consent of all the parties and the assent of the court, change the method of procedure to that of the court of equity, as established in this state before the present method of code-procedure was estab-

lished, or some other like it. Indeed, the legislature has not provided for any exclusive equitable jurisdiction under the present constitution of the state. To what extent and how this court, or the superior court, has power to ascertain and prescribe such a jurisdiction in pursuance of article four, section eight, of the constitution, has not been settled; and we do not deem it proper or expedient to undertake, in the absence of any legislation on the subject, to indicate a method of procedure in equity, until a case shall arise requiring us to do so. When such a case presents itself, we will feel called upon to decide a grave constitutional question, perhaps more than one, not at all free from embarrassment.

We have said as much in *Leggett* v. *Leggett*, 88 N. C., 108, and we have no disposition to modify what was there said.

This court cannot examine and consider the evidence submitted upon issues before a jury, for the purpose of setting aside or modifying their verdict, if in any case, certainly not when and after litigants have consented to a trial by jury in the ordinary way. It does not comport with the propriety, fairness and integrity of judicial proceedings to allow litigants to test their fortune in one competent jurisdiction, under one method of procedure, and failing in that, to try another method before the same tribunal. *Leggett* v. *Leggett, supra*; *Shields* v. *Whitaker*, 82 N. C., 516.

2. As to the first exception specified in the record, the court gave the special instruction prayed for by the appellants, and added, "unless he acquiesced in it, or ratified it afterwards."

This addition was proper and just, if not really necessary, because there was evidence tending to prove that after the deed was executed, the maker thereof repeatedly knew of, recognized and acquiesced in and was satisfied with the deed. The court is not bound in all cases to give the instruction as prayed for; indeed, it ought not to be so, when facts are in evidence bearing upon the instruction given, which the jury ought to consider in connection with it. To give the instruction without qualification or explanation might mislead the jury. In the absence of such

testimony, the plaintiffs might be entitled to have the instruction given as prayed for, or the substance of it, unqualified by words that might impair its force. Under the circumstances of this case, however, the plaintiffs were not entitled to the instruction prayed for without qualification, and the exception cannot be sustained.

3. Numerous other exceptions taken by the appellants appear in the record, and we have examined them with care. We do not deem it at all necessary to consider them separately, as they may be condensed and all considered together more conveniently and satisfactorily.

Stripped of extraneous matter, the embodied substance of them is, that where the relation of parent and child exists, and the latter becomes the beneficiary under a deed from the former, such a deed will be looked upon with suspicion; and if it is not founded upon adequate consideration, and the mental condition of the father be such (arising from debility) as to make him easily subject to importunity and undue influence, and the beneficiary has opportunity and position to exercise such influence and control, such a deed will be rejected, although there might be no actual fraud or undue influence shown. This is the substance of the special instructions prayed for and denied by the court.

The proposition thus contended for on the part of the appellants, taken in its entirety and in its broadest sense, implies that the facts stated appearing, the deed is void in law, and the court must so declare. This cannot be true, and we take it that the meaning to be attributed to it is, that nothing else appearing—in the absence of proof to the contrary—there arises a presumption of fact that the deed is void, and the jury must be instructed by the court to so find, unless the defendants shall show by proof satisfactory to the jury that the deed was made in all respects fairly and in good faith. Taking this to be the proper view of the proposition, we think it is not true, and that the court properly declined to give the instruction.

The facts stated are not inconsistent with the entire integrity of the deed, that is, the facts may be true as stated, and the deed may have been executed in good faith and without the slightest improper act or conduct on the part of the grantee. The facts stated are evidence, not amounting to a presumption, to go to the jury upon a question of *mala fides* when raised.

It is not strange or unnatural that a father, feeble in health, of weak mind, and easily influenced by a daughter having opportunity to exercise such influence, should give his daughter a house and lot and execute to her a deed for it. It is natural that the father should provide for his daughter: this is a proper and orderly thing to be done. It is what the paternal feelings of good men prompt them to do: it is what just men commend and the law tolerates. Why should the law cast suspicion upon such a transaction? When the transaction, the deed, is right in itself, such as the law tolerates and the common sense of men approves as just, reasonable and commendable, and there is the absence of the relations of suspicion founded on motives of policy, no adverse presumption arises; on the contrary, the law presumes such deed or transaction in all respects proper and just, until the contrary is made to appear. The burden is on him, who alleges the contrary, to prove it. There is no material presumption, nor is there any founded in motives of policy, that parent and child will take advantage of one another: the laws of human nature forbid this, and he who alleges the contrary must prove it.

It may be that there are cases where a parent conveys property to his child in which the presumption of fact is so strongly adverse to the latter, that the court ought to instruct the jury that they ought to find against the deed, unless the child shall prove to their satisfaction that it was fairly and honestly made; but in such a case, there must be evidence tending to show, not simply that there might have been, but that there was *mala fides*.

The relation of parent and child, as to presumptions of fraud and the *onus* of proof to rebut the same, in business transactions between them, does not stand upon the same footing as the relation of trustee and *cestui que trust*, guardian and ward, attorney

and client, principal and agent, and the like relations; it belongs to a different class of fiduciary relations, in which the presumption is not so strong, nor does it arise under the same circumstances. Besides, the presumption is always against the party having the superior or dominant position or control, and this in the case of parent and child is that of the parent. *Lee* v. *Pearce,* 68 N. C., 76; *Wright* v. *Howe,* 7 Jones, 412; *Horah* v. *Knox,* 87 N. C., 483; *McConnell* v. *Caldwell,* 73 N. C., 338; Big. on Fraud, 190, 264, 265; Best on Presumptions, 43 *et seq.*

4. The court told the jury that "undue influence is a fraudulent and controlling influence," and the plaintiffs insist that in this there is error.

"Undue influence" in any application of the phrase savors of what is meant by fraud. There may, however, be instances in which "undue influence" is not fraudulent in the strict legal sense of that term. It is often defined by the courts to be a "fraudulent and controlling influence," and it is sometimes properly so. Under the circumstances of this case, we think it was not inappropriately so defined, and we cannot see that the appellants suffered in the least degree by the explanation given by the court. This court has so regarded the meaning of the phrase in numerous cases. *Rippy* v. *Gant,* 4 Ired. Eq., 443.

We have examined with care the instructions given by the court to the jury, and are impressed by its intelligence and fairness. If the court erred at all, it was in favor of the plaintiffs, and we are satisfied they have no just grounds of complaint.

There is no error, and the judgment must be affirmed.

No error. Affirmed.