L. M. GERRINGER v. WALTER GERRINGER AND WIFE, LILLIAN GER-
RINGER; LENA BARBER AND HUSBAND, CYRUS BARBER.

(Filed 12 January, 1944.)

### 1. Parent and Child § 3: Fraud § 11—

The mere relation of parent and child, without any evidence of intimate or fiduciary relationship, does not raise a presumption of fraud or of undue influence.

### 2. Fraud § 11: Deeds §§ 2c, 17d—

Where in consideration of an agreement by his son and daughter to support him, plaintiff executed a fee simple deed, conveying all of his real estate to such son and daughter and about a year thereafter changed his mind and wanted his land back, there is no evidence of fraud or undue influence and motion for judgment as of nonsuit was properly allowed.

APPEAL from *Thompson, J.,* at May Term, 1943, of ALAMANCE.

This action was instituted 11 April, 1942, to set aside a fee simple deed executed by the plaintiff on 20 September, 1940, to Mrs. Lena Barber and Walter Gerringer, two of plaintiff's children. Plaintiff alleges that the defendants obtained the execution of the deed by undue influence.

The pertinent facts are as follows: Plaintiff's wife died in 1940, shortly thereafter Mrs. Lena Barber and Walter Gerringer arranged with the Welfare Department of the county for a woman and her fifteen-year-old son to move into plaintiff's home. Plaintiff testified that Mrs. Lena

Barber and Walter Gerringer suggested that he marry this woman. He asked her to marry him and she consented. She entered his home on Monday and he married her on the following Saturday. On the day before his marriage, his son Walter, one of the defendants, and Cyrus Barber, the husband of his daughter, Lena, also a defendant, took him to a lawyer's office in Reidsville, N. C., where the deed referred to above was prepared and executed. The deed names a consideration of Ten Dollars and other valuable considerations, and was filed for registration in the office of the Register of Deeds for Alamance County on the same day it was executed. On this same date the plaintiff executed a will in which he bequeathed to Mrs. Lena Barber and Walter Gerringer, substantially all of his personal property. A separate agreement for support, in consideration of the execution of the deed, was entered into by and between L. M. Gerringer, Walter Gerringer and Mrs. Lena Barber, of even date with the deed and will. The plaintiff had made a previous will, which was in the possession of Mr. John Garrison. After leaving the lawyer's office in Reidsville, they drove to Mr. Garrison's home, and Mr. Garrison, at the request of the plaintiff, burned the former will.

The defendants paid off a mortgage on the premises conveyed to them, securing an indebtedness of $200.00, incurred by the plaintiff in connection with the funeral expenses of his first wife.

The plaintiff's second marriage was a failure. His wife left him five weeks after the marriage, and he has not seen her since and knows nothing of her whereabouts.

Plaintiff requested his son, Will, and his wife, who had lived with him for many years, to leave his home after he married the second time, and they did so. After his wife left him, his daughter, Lena, offered to take him in her home, but he refused to live with her. She then offered to move in with him and take care of him. He refused to permit her to do so, because he said "He would not live with her husband, Cyrus Barber." He likewise declined to live with his son Walter; in fact, he testified, "I didn't want to live with nary one of them," and "I told them both to leave there."

On the question of undue influence, the plaintiff testified: Lena and Walter had begged him for some time prior to the execution of the deed, to give them his property and promised if he would do so they would take care of him, and that he would not have to work any more, but that they had failed to do anything for him. He testified that he knew he was executing a deed and conveying all his property to Walter and Lena, and that the reason he did so was because he thought he was going to be taken care of. "I don't know as anybody ever made me do anything I did not want to do. Hasn't anybody made me sign the deed, just persuaded me to sign it. I decided I wanted to do it if they would have

done what they said they would. I reckon I did sign the deed because I wanted to. . . . If I had felt like I do now I would never have signed that deed. . . . Yes, I want the land back. . . . As to when I decided that I didn't want them to have this land, well, I decided as soon as they quit coming to see me. I don't remember how long it was; it was after the deed was made. . . . That was a right smart little bit. I reckon it was a year."

On cross-examination plaintiff admitted that the only objection he had to this transaction was that they (Lena and Walter) had failed to support him as they promised to do.

Plaintiff is eighty-two years of age and can neither read nor write; however, he has operated a store for thirty-five years, buys his merchandise from the wholesale houses, pays cash for it, and sells for cash. He knows how to add figures and to handle money. In 1940 plaintiff was suffering from rheumatism and high blood pressure, but he continued to operate his store and still continues to do so.

At the close of plaintiff's evidence, defendants moved for judgment as of nonsuit. Motion allowed. Plaintiff appealed, assigning error.

*Thos. C. Carter, W. D. Barrett, of Long, Long & Barrett, for plaintiff.*
*Glidewell & Glidewell for defendants.*

DENNY, J. This is an action to set aside a deed. The plaintiff is relying upon the exercise of undue influence upon him by the defendants in procuring the execution of said instrument.

There is no evidence in this record that the plaintiff lacked sufficient mental capacity to execute a deed on 20 September, 1940, or that he was easily influenced by reason of his mental condition. The plaintiff did testify that he was persuaded by Lena, his daughter, and Walter, his son, to make the deed; that Lena came to see him often and begged him to convey his property to them and that Walter came occasionally, and both agreed to take care of him if he would convey his property to them.

The sum and substance, however, of plaintiff's testimony amounts to this: In consideration of an agreement on the part of his son, Walter, and his daughter, Lena, to support him; which agreement is in writing and purports to have been signed by the parties, the plaintiff executed a fee simple deed, conveying all his real estate to said son and daughter. About one year thereafter, the plaintiff changed his mind and decided he wanted to recover his land, because, according to his version, he was not getting the support he had been promised. It will be noted that there is no evidence that the deed is not exactly like the plaintiff intended it to be at the time of its execution. Furthermore, plaintiff's only objection to this transaction, according to his testimony, is that he is not receiving

the support he had been promised, which was the consideration for transferring his property. But plaintiff admits that after the execution of the deed, and after his wife left him, his daughter, Lena, offered to take him in her home, but he refused to live with her. She then offered to move in with him and take care of him, he also rejected that offer. He likewise declined to live with his son, Walter.

It is contended by the plaintiff that the separate agreement for support was not signed by him and that he knew nothing of its existence until after the institution of this action, and that this purported agreement in itself is evidence of fraud. We cannot so hold, since there is no conflict between the provisions for the support of the plaintiff as contained in the written instrument, and the oral testimony of the plaintiff as to his agreement for support by these defendants at the time of the execution of the deed.

Plaintiff further urges that under the principles laid down in the case of *McNeill v. McNeill, ante,* 178, 25 S. E. (2d), 615, he is entitled to have the jury pass upon the question of fraud or undue influence; that the intimate relationship which existed between the parties raises a presumption of fraud or undue influence. The contention is untenable. The relationship of the parties in the instant case is not similar to the relationship of the parties in the *McNeill case, supra.* Here we are dealing with a parent and his children, without any evidence of intimate or fiduciary relationship. There a fiduciary relationship was involved. The mere relation of parent and child does not raise a presumption of undue influence. *In re Craven,* 169 N. C., 561, 86 S. E., 587.

A careful consideration of all the evidence on this record, bearing on the question of fraud or undue influence, when considered in the light most favorable to the plaintiff, is insufficient to warrant the submission of an issue thereon to the jury. *Myatt v. Myatt,* 149 N. C., 137, 62 S. E., 887; *In re Craven, supra; Owens v. Rothrock,* 198 N. C., 594, 152 S. E., 681.

Plaintiff's remedy, if any, appears to be, not in equity, but in a court of law for breach of contract. *Hinsdale v. Phillips,* 199 N. C., 563, 155 S. E., 238.

The judgment of the court below is

Affirmed.