MRS. NORA WALTERS v. CHARLOTTE WALTERS BRIDGERS AND HUS-
BAND, PAUL F. BRIDGERS, VIVIAN WALTERS INGRAM AND HUS-
BAND, CLARENCE P. INGRAM.

(Filed 25 November, 1959.)

1. **Cancellation and Rescission of Instruments § 9: Fraud § 3—**

   The mere relationship of parent and child does not raise the presumption of undue influence.

2. **Cancellation and Rescission of Instruments § 10— Evidence held insufficient to show that deed was procured by fraud and undue influence.**

   This action was instituted by plaintiff, widow, to cancel a conveyance to two of her daughters. Plaintiff's evidence tended to show that she was old and infirm and could not drive her car, that defendant daughter, who lived one-quarter of a mile distance, drove her into town to make a will, that the daughter stated that if plaintiff left her property to her children equally that none of them would get anything, that the daughter had an attorney come to plaintiff in the car, that plaintiff herself talked with the attorney, and that plaintiff thereafter signed an instrument under the belief that she was signing a will whereas in fact it was the deed. There was no evidence that this daughter had anything to do with the preparation of any instrument for plaintiff or that plaintiff was mentally incompetent, and the evidence disclosed that the recorded deed was mailed to plaintiff and remained in her possession, that some years prior to the time plaintiff asserted she discovered the instrument to be a deed plaintiff on one occasion sold timber from the land and, upon being advised that she had theretofore deeded the land to her daughters, divided the proceeds of the sale, after adding $200.00 of her own money thereto, among each of her daughters, and that on another occasion plaintiff went into town for the purpose of having a will prepared rather than for the purpose of changing her will or adding a codicil thereto. *Held:* The evidence is insufficient to be submitted to the jury on the issue of fraud and undue influence, and nonsuit was correctly entered.

3. **Cancellation and Rescission of Instruments §§ 1, 9: Quieting Title § 1—**

   An action by plaintiff to set aside a deed executed by her, plaintiff having offered the deed in evidence and contending that its execution was procured by fraud and undue influence, is not an action by plaintiff

10 — 251

to quiet title but is an action to cancel and rescind the deed, and the burden is upon plaintiff to prove her case by the preponderance or greater weight of the evidence.

HIGGINS, J., not sitting.

APPEAL by plaintiff from *Morris, J.*, 27 January Civil Term, 1959, of WAYNE.

This is a civil action instituted by the plaintiff, Mrs. Nora Walters, to have a certain paper writing purporting to be a deed from her to three of her seven living children, Charlotte Walters Bridgers, Vivian Walters Ingram, and Nola Walters Peele, which deed was executed on 8 February 1945 and filed for registration in the office of the Register of Deeds for Wayne County on 15 February and registered in Book 295, Page 103, set aside and declared null and void.

The plaintiff, a widow, was 70 years of age in 1945 and she was the owner in fee simple of two tracts of land in Wayne County: one for 104 acres which she conveyed to three of her seven children in the deed referred to above, and the other tract containing 71 acres was conveyed by deed dated 8 February 1945 to two of her daughters, namely, Lena Walters Lynch and Janie Walters Dail, which deed was duly recorded in the office of the Register of Deeds for Wayne County on 15 February 1945 in Book 295, page 102.

Mrs. Emma Walters Newsome and Mrs. Hannah Walters Gray, the others daughters of the plaintiff, were not included as grantees in either of the above deeds.

In January 1945 the defendant Vivian Walters Ingram was living with her mother. The defendant Charlotte Walters Bridgers and her husband, Paul F. Bridgers, were living in their home about one-quarter of a mile from the home of the plaintiff. The plaintiff testified that Charlotte "came to see me once a week, or two weeks, something like that. * * * Paul and Charlotte Bridgers helped advise me with my affairs some. I think I relied on Charlotte mostly.

"In 1945 I had arthritis and neuritis. I have been walking with crutches, I don't know how many years. I have been feeble, I don't know how many years. I go to the doctor regularly, all the time, and have for 20 to 25 years. My blood pressure has been bad, too. I have to go to the doctor for that.

"I saw Charlotte during the month of January 1945. We came to town several times. I thought I was going to have a will made. She had Mr. Best come out and talk with me. I told him what I wanted done. I told him that I was fixing to fix papers, but told

WALTERS *v.* BRIDGERS.

him what to put down. I told him to make a will. He had a tablet and pencil, and put that down, and went on off. Not much of anything was said between Charlotte and me. I told her we were going to fix a will, and she said, 'If we all share alike, wouldn't any of them get anything, if I fixed it for all to have something there wouldn't anybody get anything.'

"I did not go to Mr. Best's office. I sat in the car. Charlotte went up there, and got him to come down. After I talked to him in the car, which, I think, was before the deeds were written, I did not see Mr. Best any more. It was a long time after that, and right good while before I signed the papers. We went up to Gerney Jinnette's office to sign them. * * *

"I am 83 years of age. I know she was with me because nobody else came with me. She brought me to town when I came. I own an automobile. It has been so long since I drove it, I do not remember. People had to drive for me. It was the same car that I have now. The doctor won't let me drive. After I signed the paper I don't remember who took them. I didn't see anybody take them. I thought we left them lying on the table.

"Last May a year ago, Charlotte came by my house; I was worried out with the farm, and told her I was going to sell out, that I wasn't able to attend to it. She said, 'Mamma, you can't, you willed it to us.' I said, 'What?' She said I couldn't. * * *

"As soon as she told me I couldn't sell the land, as soon as my daughters came that morning, I told them I wanted them to bring me to town. I found it was deeds. That was last May, was a year ago. From the time that the papers were signed until then, I had never seen them, or known of their contents. I didn't even look at them. This is the paper that I signed before Jinnette.

"The first time that I knew it had been recorded was last May a year ago, when I went and got them. I did not put on it the notification, 'Not to be published,' and did not instruct anybody to put it there. * * *

"After I found out these paper writings were deeds, and not a will, I went after Charlotte Bridgers and Vivian Ingram to make a deed to me, to have them back, in order that all the children might share alike. I took a paper around to get them all to sign it. Lena and Janie signed it back to me (the 71-acre tract) * * *. Mrs. Peele signed one-third of the place where I live back to me. * * *

"On or about January 19, 1955 I came to town with my daughter, Mrs. Bridgers, in regard to a third paper writing, purporting to be a will. Nobody that I know of knew anything about it, other than

Charlotte. So far as I know I did not mention it to my other children. I can't tell you who brought my mail at that time, first one and then the other brings it to the house to me. I did not see the deeds after they were recorded before 1957, and after Mrs. Bridgers told me that she had the land, so that I could not sell it. I had seen it, but had not opened them. The deeds were in an envelope, but I did not open it. * * * I thought the paper was a will."

The testimony of this witness further shows that in 1951 she sold $4,000 worth of timber off of the 71-acre tract of land, and when informed that she had deeded the property away and that she had no right to sell the timber, she took $200.00 of her own money and the $4,000 received for the timber, and gave each of her seven daughters $600.00. In this connection she testified, "I was told that I didn't have no right to sell it, after I sold it. I don't remember what year it was when we sold the timber. I gave Mrs. Bridgers a part of the money for the timber on the other place. I divided it, equally, between all seven." On cross-examination, the plaintiff testified, "That is my signature on Exhibit 1 (the deed.). I can read and write. The timber that I spoke of was sold to Broadhurst Pearce, about 1951."

The plaintiff offered the deed she was attempting to have set aside in evidence generally rather than for the purpose of attack. This is plaintiff's Exhibit No. 1. She introduced as Exhibit No. 2 a deed of the same date, conveying the 71-acre tract to her daughters Lena Walters Lynch and Janie Walters Dail. Plaintiff also introduced as Exhibit No. 3 a deed dated 19 July 1957 from Nola Walters Peele and her husband, Horace Peele, to the plaintiff of one-third undivided interest in the 104-acre tract. The plaintiff likewise introduced in evidence a deed dated 19 July 1957 from Lena Walters Lynch and her husband, J. L. Lynch, and Mrs. Janie Walters Dail (widow), reconveying to plaintiff the 71-acre tract. These deeds were introduced without objection, and the plaintiff is presently the owner in fee simple of the 71-acre tract and a one-third interest in the 104-acre tract.

At the close of the plaintiff's evidence, the defendant moved for judgment as of nonsuit and the motion was granted. The plaintiff appeals, assigning error.

*J. Faison Thompson & Son for plaintiff.*
*Paul B. Edmundson, Jr., Braswell & Strickland for defendants.*

DENNY, J. The plaintiff's assignments of error based on except-

ions to the exclusion of evidence or the limiting of certain evidence as against the defendant Charlotte Walters Bridgers only, have been carefully considered and they are without merit and are overruled.

The only remaining assignment of error is based on an exception to the allowance of defendants' motion for judgment as of nonsuit, made at the close of the plaintiff's evidence.

It is alleged in the complaint herein that Charlotte Walters Bridgers knew that her mother, by reason of her physical and mental condition, was incapable of knowing and did not know how to transact business; and through fraud and undue influence took advantage of her mother's physical and mental condition, and contrary to the will and desire of her mother, "caused a paper writing, purporting to be a will, to be prepared, and caused her mother to go through the form of acknowledgment of her signature to the paper writing, purporting to be a deed" for the 104-acre tract of land, to Charlotte Walters Bridgers, Vivian Walters Ingram, and Nola Walters Peele.

It is further alleged that at the time of the execution of said deed, Mrs. Nora Walters was infirm and had been for several years prior thereto; that this fact was well known to Charlotte Walters Bridgers "who claims to own a one-third undivided interest in the property, under the pretended deed; that the said Charlotte Walters Bridgers * * * procured her to execute the deed for the real property, representing to this plaintiff that the paper writing * * * was a will; * * * that this plaintiff relied upon her daughter, Charlotte Walters Bridgers and, without consideration, signed the said paper writing; that the said Charlotte Walters Bridgers, by reason of the confidential relationship existing between her and this plaintiff, her mother, and for the further reason that Charlotte Walters Bridgers was strong and vigorous in mind and body, exercised a strong influence over the mind and body of this plaintiff; that this plaintiff was grossly ignorant of her act, and relied upon the representation of Charlotte Walters Bridgers, and is entitled to relief."

As we interpret the evidence introduced in the trial below, it does not support the plaintiff's allegations of fraud and undue influence. Moreover, the mere relation of parent and child does not raise the presumption of undue influence. *In re Craven*, 169 N.C. 561, 86 S.E. 587; *Gerringer v. Gerringer*, 223 N.C. 818, 28 S.E. 2d 501; *Jernigan v. Jernigan*, 226 N.C. 204, 37 S.E. 2d 493; *Davis v. Davis*, 236 N.C. 208, 72 S.E. 2d 414. *Cf. McNeill v. McNeill*, 223 N.C. 178, 25 S.E. 2d 615.

The plaintiff's daughter, Mrs. Bridgers, lived about a quarter of a mile from her. The plaintiff owned an automobile but was physi-

cally unable to drive it. She called on Mrs. Bridgers to drive for her on numerous occasions. According to plaintiff's own testimony, when she called on Mrs. Bridgers to take her to town to see her attorney in January 1945, "not much of anything was said between Charlotte and me." The evidence supports the conclusion that she sent Mrs. Bridgers to the office of her attorney to get him to come to the car and confer with her. She testified that she gave her attorney instructions as to what she wanted done and that he wrote down those instructions. There is no evidence tending to show that Mrs. Bridgers participated at all in the conversation between the plaintiff and her attorney on that occasion, or that she acted in any other capacity than that requested of her by her mother when she later took her mother to Mr. Jinnette's office on 8 February 1945 to execute the papers which had been prepared by her attorney. Likewise, there is no evidence tending to show that Mrs. Bridgers had the deeds recorded or that she requested that the deeds filed for registration were "not to be published." The evidence does support the view that after the deeds were recorded by the Register of Deeds they were mailed to the plaintiff and that she has had continuous possession of them since that time.

Furthermore, the record reveals that the plaintiff sold $4,000 worth of timber from the 71-acre tract of land in 1951, and after she found that she had conveyed this property to two of her seven children she added $200.00 to the proceeds from the sale of the timber and gave each of her daughters the sum of $600.00.

It likewise appears that thereafter, in January 1955, she again went to town with Mrs. Bridgers for the purpose of having a will written, notwithstanding the fact that she testified she thought she had a will in her possession, prepared in 1945, and that she did not discover otherwise until May 1957. The evidence does not indicate any intent to change her will or to add a codicil thereto; her purpose, according to her testimony, was to have a will prepared.

The plaintiff is relying principally on the case of *Vail v. Vail*, 233 N.C. 109, 63 S.E. 2d 202, for a reversal of the judgment below. The factual situation in the Vail case is unlike the facts in the instant case. In the Vail case there was competent evidence to the effect that the mother authorized one of her sons to have a deed prepared, for her execution, for the purpose of conveying to him a lot on Vail Alley, in High Point, which was worth about $1,200. Instead of carrying out his mother's instructions, he had a deed prepared to the Vail homeplace located on South Main Street in the City of High Point, which was worth about $16,000. Certainly that

evidence, together with other evidence tending to show that the defendant had acted on numerous occasions as agent for his mother, was sufficient to carry the case to the jury on the issue of fraud and deceit.

In the instant case, there is not a scintilla of evidence that tends to show that the defendant Mrs. Bridgers ever had anything to do with the preparation of any instrument for her mother; and the fact that she said to her mother on the way to town, "If we all share alike, wouldn't any of them get anything," etc., is not sufficient to establish fraud or undue influence.

If Mrs. Bridgers did assert any undue influence or practice any fraud on the plaintiff in the procurement of the deed in controversy, the plaintiff has failed to offer any competent evidence sufficient to support the allegations with respect thereto.

In the case of *Jernigan v. Jernigan, supra,* in a case similar to that before us, *Chief Justice Stacy* said: " * * * the petitioners contend that they were not allowed the benefit of a factual presumption of fraud or undue influence which arises from the relationship of the parties, to wit, parent and child. *McLeod v. Bullard,* 84 N.C. 516; *Lee v. Pearce,* 68 N.C. 76; *Abbitt v. Gregory,* 201 N.C. 577, 160 S.E. 898. In answer to this position, it suffices to point out that while the adult daughter acquired the 42-3/4 acres of land from her mother in 1941, there is no evidence of any confidential or fiduciary relation, existing between them at the time, which would give rise to a presumption of fraud. *Gerringer v. Gerringer,* 223 N.C. 818, 28 S.E. 2d 501; *In re Will of Atkinson,* 225 N.C. 526; *In re Craven,* 169 N.C. 561, 86 S.E. 587. The mother lived in her home; the daughter lived in hers a quarter of a mile away. The mother managed her own affairs; the daughter helped her in her old age. This seems to be all. *In re Craven, supra.* 'The mere relation of parent and child does not raise the presumption of undue influence.' *Gerringer v. Gerringer, supra.*"

What was said in the Jernigan case seems to apply with equal force to the present case.

The plaintiff contends that this is an action to quiet title and that she is entitled to judgment as a matter of law upon a plea of confession and avoidance if the defendants fail to prove the new matter alleged by them as an affirmative defense, citing *Wells v. Clayton,* 236 N.C. 102, 72 S.E. 2d 16. We agree with what was said in that case; that case, however, is not controlling here. Here, the plaintiff alleged and offered evidence tending to show that the record title to the premises in controversy is in the defendants, except the one-

third undivided interest therein which Nola Walters Peele and her husband, who live in Florida, reconveyed to the plaintiff. Consequently, this is simply an action to set aside a deed allegedly procured by fraud and undue influence. There is no plea of confession and avoidance involved here as there was in *Wells v. Clayton, supra.* Therefore, the burden rested upon the plaintiff in the trial below to prove not by clear, cogent and convincing evidence that the deed was procured by fraud or undue influence, *Ricks v. Brooks,* 179 N.C. 204, 102 S.E. 207, but by the preponderance or greater weight of the evidence. *Bolich v. Insurance Co.,* 206 N.C. 144, 173 S.E. 320.

The judgment of the court below is
Affirmed.

HIGGINS, J., not sitting.