MYRTLE JONES v. MAGGIE BEATRICE OVERMAN SAUNDERS AND HUSBAND, BRYAN SAUNDERS.

(Filed 10 May, 1961.)

**1. Cancellation and Rescission of Instruments § 10— Evidence of fraud or duress held insufficient to raise the issue.**

Evidence tending to show that the owner conveyed a part of his land to his grandson and a part to his daughter, to the exclusion of other grandchildren and another daughter, that the grantees had lived with grantor continuously since the death of grantor's wife, that the daughter knew nothing of the deed until her father delivered it to her, without evidence that the father relied on the daughter for advice or guidance or that she exercised any dominating influence over him, *is held* insufficient to be submitted to the jury on the issue of whether the daughter procured the execution of the deed by fraud or duress, notwithstanding evidence of mutual trust and confidence between them.

**2. Fraud § 2—**

The mere relation of parent and child does not raise a presumption of fraud or undue influence in the conveyance of property by the parent to the child.

**3. Cancellation and Rescission of Instruments § 10—**

The fact that a deed from a father to his child is not founded on a valuable consideration raises no presumption of fraud, certainly where the evidence discloses services rendered by the child in looking after the parent and paying hospital and medical bills, etc., since even though such services are presumed gratuitous, the law does not preclude a parent from compensating a child for such services.

**4. Deeds § 7—**

The probate and registration of a deed raise the rebuttable presumption that the instrument had been signed, sealed, and delivered, and the burden is on the party asserting the invalidity of the deed for want of delivery to prove non-delivery.

**5. Same—**

The requisites of delivery of a deed, essential to its validity, are an intention on the part of the grantor to give the instrument legal effect according to its purport and tenor, the evidencing of such intention by some word or act disclosing that the grantor has put the instrument beyond his legal control, and the acquiescence by the grantee in such intention.

**6. Same—**

Evidence tending to show the owner of land had it surveyed and caused a deed to be prepared conveying a part thereof to his daughter, that he signed the deed and manually delivered it to her and permitted her to put it with her other valuable papers, is sufficient evidence of delivery, notwithstanding the repository was accessible to, and used by, both.

APPEAL by defendants from *Preyer, J.,* November 1960 Term of RANDOLPH.

This action was instituted 27 April 1957 to set aside and cancel a recorded deed on the ground there was no delivery, and on the alternate ground that its execution was procured by the fraud and duress of feme defendant.

Plaintiff Myrtle Jones and defendant Maggie Saunders are sisters. The subject of the suit is a 65-acre tract of land formerly owned by their father, C. S. (Charlie) Overman. Male defendant is the husband of Maggie Saunders and a formal party only. As hereinafter used, "defendant" refers to Maggie Saunders.

The evidence tends to show:

Charlie Overman owned 110 acres of land in Columbia Township, Randolph County, on which he lived and reared his children. He was a farmer. He had three children who reached adulthood — plaintiff, defendant, and a son John Overman who died about 1933 survived by eight children, all of whom are now living and of age. In 1921, when plaintiff was 18 years of age, she married and moved away and has not lived at her father's homeplace since.

Defendant lived with her father until his death in 1957. Her mother died in the late 1930s. Defendant was about 30 years old at the time; she was born in 1908. After the death of the mother, defendant and Arnold Overman lived at the home place with Charlie Overman. Arnold Overman is a son of John Overman and a grandson of Charlie Overman. Defendant had a cotton patch and raised chickens. In 1945 she got a job and earned wages.

In 1947 Charlie Overman had his land surveyed. On 26 March 1947 he went to Siler City and had two deeds prepared — one to Arnold Overman for 45 acres, the other to defendant for 65 acres including the home site. Arnold Overman was present at the time. Charlie Overman signed both deeds. Both deeds had the following provision inserted at the end of the description and preceding the *habendum* clause: "I hereby reserve for myself a life estate in the above described tract of land." Upon their return home Charlie Overman immediately delivered to Arnold the deed for the 45 acres. Defendant was at work. When she came home her father handed her the deed for the 65 acres. She and her father then went to their bedroom and put the deed in a dresser drawer. She, her father and Arnold regularly used this dresser drawer for their papers. Both before and after this date defendant at all times had a key to the house. Arnold kept his deed in this drawer. The deed to defendant recited a consideration of $500. She paid him nothing when he handed her the deed, but she paid him later. She paid bills for him, helped pay taxes. In 1947

Charlie Overman was 77 years old, had hardening of the arteries, spells with his stomach, and at times dizzy spells. Arnold paid rent during his grandfather's lifetime. Charlie Overman rented the land and collected rent on the 65 acres as long as he lived. He listed the 65 acres for taxes in his own name until he died.

In 1951 Charlie Overman fell and broke his hip. Defendant paid his hospital, medical and doctor's bills. When he left the hospital they went to plaintiff's to live. They lived there until 1955. Defendant continued to work at her job. Part of the time she paid plaintiff $5.00 rent each two weeks for upstairs rooms. Plaintiff was paying $8.00 per month for the entire house. Defendant furnished a small amount of groceries and vegetables. Plaintiff had the care of their father. The amount of attention given him by each is in dispute. He frequently visited the farm.

In 1955 defendant, then about 47 years old, married Bryan Saunders and they moved to the homeplace — the 65-acre tract. Her father moved there with them. Plaintiff states he did not want to. He remained with them at the homeplace until he died 27 February 1957. He was 87 years old when he died. In his last days he was in the hospital twice. Defendant paid his hospital and doctor's bills. Plaintiff visited her father weekly prior to 1951, and frequently from 1955 on.

After her father's death, defendant took the deed from the dresser drawer and had it recorded. The date of the recordation is 6 March 1957. Defendant went to plaintiff's home and delivered her a passbook entitling plaintiff to $500. Defendant said: "Here is what papa left you." Defendant also stated: "Now you know how things are fixed. God in heaven knows I didn't know a thing about it."

Defendant and her father had a joint account in a savings and loan association. The 65-acre tract is estimated to have a market value of $5,000 to $9,550. All grandchildren, except Arnold, signed a paper authorizing plaintiff to bring this suit in her name and on their behalf.

Issues were submitted to and answered by the jury as follows:

"1. Did C. S. Overman execute and deliver the paper writing recorded in Book 628, page 453, office of the Register of Deeds of Randolph County, to Maggie Beatrice Overman Saunders? Answer: No.

"2. Did the defendant Maggie Beatrice Overman Saunders procure the execution of the paper writing recorded in Book 623, page 458, office of the Register of Deeds of Randolph County, through fraud or undue influence? Answer: _____."

The court entered judgment declaring the deed in controversy null and void.

Defendants appeal.

*Ottway Burton and Linwood T. Peoples for plaintiff.*
*Coltrane and Gavin and Donald L. Paschal for defendants.*

MOORE, J.  In apt time defendants moved for nonsuit. As to the cause of action based on alleged nondelivery of the deed, the exception to the refusal to nonsuit is not assigned as error and has been abandoned. But as to the alternative cause of action alleging that the deed was procured by fraud and duress, the question of the sufficiency of the evidence is raised — Assignment of error No. 26. We do not approve the method used in preserving the exception; it is not in accordance with procedural rules. When we look to the substance of the assignment, the exception is brought forward. Since there must be a new trial in any event, we feel justified in the exercise of discretion and in the interest of justice to treat the assignment as based on exception to denial of nonsuit. By disposing of this question at the outset, discussion of other assignments will be simplified.

When considered in the light most favorable to the plaintiff, giving her the benefit of every reasonable inference to be drawn therefrom, the evidence is insufficient to make out a *prima facie* case of fraud or duress. There is no evidence that defendant persuaded or even requested her father to execute the deed. There is not even an intimation that they discussed the matter beforehand or that she even knew he intended to execute the deed until he handed it to her. She was not present when the deed was prepared and signed. Its preparation was entirely under his direction. He had the land "run out" preparatory to making the deed. He deeded the land to the two persons who had stayed with him during the period of approximately ten years he had been a widower. Indeed, this daughter and grandson had been there all their lives. He was old, it is true — he was then 77. But there is no suggestion he was feeble or his mind was impaired. He had hardening of the arteries, spells with his stomach and occasional dizzy spells — conditions more or less common to old age. He lived to be 87, notwithstanding a serious accident in 1951. He attended to his own business affairs. There is no evidence that he relied on defendant for advice and guidance or that she exercised any dominating influence over, or imposed her will upon, him. It is reasonable to assume that she attended to household duties. She tended a cotton patch and raised chickens. Later she got a job and earned wages. She paid some of his bills, helped with taxes and defrayed his hospital and medical expenses. He had physical access to the deed for ten years prior to its recordation. The deed recited a valuable consideration of $500. It is reasonable to assume that he considered her constancy and devotion a more valuable consideration. It is true there was mutual

trust and confidence between them — they maintained a joint savings account.

The mere relation of parent and child does not raise a presumption of fraud or undue influence. *Walters v. Bridgers,* 251 N.C. 289, 293, 111 S.E. 2d 176; *Davis v. Davis,* 236 N.C. 208, 211, 72 S.E. 2d 414; *Gerringer v. Gerringer,* 223 N.C. 818, 821, 28 S.E. 2d 501. In certain known and fiduciary relations, if there be dealing between the parties, on complaint of the party in the power of the other, or those succeeding to his rights, the relation itself raises a presumption of fraud as a matter of law. *McNeill v. McNeill,* 223 N.C. 178, 25 S.E. 2d 615. But where no such relationship exists, no presumption of fraud arises. *Gerringer v. Gerringer, supra.* In the instant case defendant was not in such fiduciary relation with her father. It was a family relationship, not a fiduciary one. She exercised no power or control over him or his property. There is no evidence of overreaching or unfair dealing on her part. *Davis v. Davis, supra.*

*Wessell v. Rathjohn,* 89 N.C. 377, presents a factual situation quite similar to the case at bar. A father, having two daughters, executed to one of them a deed not founded on a valuable consideration. After the death of the father the other daughter sought to set aside the deed on the ground of mental incapacity of grantor and undue influence on the part of grantee. The verdict favored defendant. In discussing the trial court's ruling on a prayer for special instruction this Court said: "It is natural that the father should provide for his daughter: this is a proper and orderly thing to be done. It is what the paternal feelings of good men prompt them to do: it is what just men commend and the law tolerates. Why should the law cast suspicion upon such a transaction? When the transaction, the deed, is right in itself, such as the law tolerates and the common sense of men approves as just, reasonable and commendable, and there is the absence of the relation of suspicion founded on motives of policy, no adverse presumption arises; on the contrary, the law presumes such deed or transaction in all respects proper and just, until the contrary is made to appear. . . . (T)here must be evidence tending to show, not simply that there might have been, but that there was *mala fides.*"

"Right or wrong, it is to be expected that a parent will favor the child who stands by him, and to give to him, rather than the others, his property. To defeat a conveyance under those circumstances something more than the natural influence springing from such relationship must be shown; imposition, fraud, importunity, duress, or something of that nature, must appear; otherwise that disposition of property which accords with the natural inclinations of the human heart must be sustained." *Plemmons v. Murphey,* 176 N.C. 671, 679, 97 S.E. 648.

Plaintiff contends that inadequacy of consideration alone is sufficient to withstand the motion for nonsuit. "The controlling principle established by our decisions is that inadequacy of consideration is a circumstance to be considered by the jury in connection with other relevant circumstances on an issue of fraud, but inadequacy of consideration standing alone will not justify setting aside a deed on the ground of fraud. However, if the inadequacy of consideration is so gross that it shows practically nothing was paid, it is sufficient to be submitted to the jury without other evidence." *Garris v. Scott*, 246 N.C. 568, 575, 99 S.E. 2d 750. In the *Garris* case the transaction was between strangers. There was evidence of advantage, overreaching and oppression in addition to inadequacy of consideration. Love and affection, recognition of kindness and care, and provision for the future of a child furnish adequate consideration as between parent and child, in the absence of evidence of fraud and duress. *Walters v. Bridgers, supra; Cannon v. Blair*, 229 N.C. 606, 50 S.E. 2d 732. Services performed by one member of the family for another, within the unity of the family, are presumed to have been rendered in obedience to a moral obligation and without expectation of compensation. *Allen v. Seay*, 248 N.C. 321, 323, 103 S.E. 2d 332. But this principle of law does not prevent a parent from compensating a child for such services, and does not render consideration for a compensating conveyance inadequate. In the *Walters* case defendant paid nothing for the conveyance, yet nonsuit was affirmed.

The trial court erred in denying the motion for nonsuit in the cause of action based on alleged fraud and duress.

Defendants except to the following portion of the charge: "Now, the burden of proof on that issue (first issue) is on the defendant Mrs. Saunders to convince you by the greater weight of the evidence that the deed was properly executed and delivered to her."

The exception is well taken. Plaintiff has the burden of proving nondelivery. We dealt directly with this question in *Johnson v. Johnson*, 229 N.C. 541, 50 S.E. 2d 569. This was a special proceeding for partition. Defendants pleaded sole seizin. By way of reply plaintiffs attacked the deed under which defendants claimed, and alleged that it was a forgery and had not been signed, sealed and delivered. It had been recorded. After a general discussion of "burden of proof" this Court addressed itself to the exact question:

". . . . Manifestly, the burden of showing that the deed was a forgery devolved upon the plaintiffs under the pleadings in the case at bar for the reason that the nonexecution of the instrument by the supposed grantor constituted an essential element of their claim or cause of action. The reply of the plaintiffs disclosed the existence of

the alleged deed and the fact that it had been probated and registered. The probate and registration gave rise to the rebuttable presumption that the instrument had been signed, sealed, and delivered by the purported grantor. *Best v. Utley,* 189 N.C. 356, 127 S.E. 337. Thus, the plaintiff would have suffered defeat on the issue as to the execution of the deed if no evidence had been offered on either side with respect thereto.

"This conclusion is sanctioned by repeated decisions of this Court holding that the burden of proving his assertion of nonexecution rests on a plaintiff who seeks to establish a claim to land upon an allegation that the grantor named in a probated and registered deed regular on its face did not in fact execute the instrument. Besides, the same cases clearly establish the rule that a party claiming title under such probated and registered deed can call to his aid the rebuttable presumption that the supposed grantor executed such deed whenever the instrument is subjected to attack on an allegation of nonexecution without regard to whether he be the plaintiff or the defendant. (Citing many authorities)

"The trial judge was understandably misled on the question of the burden of proof as to the execution of the deed in issue by a too literal reliance upon certain language in *Belk v. Belk,* 175 N.C. 69, 93 S.E. 726; *Jones v. Coleman,* 188 N.C. 631, 125 S.E. 406; and *Burton v. Peace,* 206 N.C. 99, 173 S.E. 4."

In the argument before this Court counsel for plaintiff, with commendable candor, admitted that the burden of the issue was upon plaintiff. But he insisted that the error was harmless, contending that there was no evidence of an intent on grantor's part to deliver the deed, and that plaintiff was entitled to a peremptory instruction on the first issue. We do not agree.

"Delivery is essential to the validity of a deed of conveyance. Both the delivery of the instrument and the intention to deliver it are necessary to the transmutation of title." *Elliott v. Goss,* 250 N.C. 185, 188, 108 S.E. 2d 475. "The requisites to the valid delivery of a deed are threefold. They are: (1) An intention on the part of the grantor to give the instrument legal effect according to its purport and tenor; (2) the evidencing of such intention by some word or act disclosing that the grantor has put the instrument beyond his legal control, though not necessarily beyond his physical control; and (3) acquiescence by the grantee in such intention. (Citing many cases)." *Ballard v. Ballard,* 230 N.C. 629, 633, 55 S.E. 2d 316. Presumption of delivery arises from registration, even after the death of the grantor, and in the absence of other evidence is sufficient to support a finding of delivery. *Cannon v. Blair, supra.*

We think there was sufficient evidence of intent to deliver without resort to the presumption. Intent is an act or emotion of the mind and is usually not capable of direct proof. It is usually shown by the acts and declarations of the intender when considered in the light of circumstances known to him. That Charlie Overman had the land surveyed, caused the deed to be prepared, signed it, manually delivered it to defendant, permitted her to put it with her other valuable papers, and for ten years made no attempt to retrieve it or interfere with her access to and possession of it, though he could have physically re-taken it, is strong evidence of his intent to deliver the deed according to legal definition of that term.

Questions raised by the further assignments of error may not recur when the cause is tried again. For this reason we do not discuss them here.

In the cause of action to set aside and cancel the deed from C. S. Overman to Maggie Beatrice Overman (Saunders) for nondelivery, there will be a

New Trial.