IN THE MATTER OF THE WILL OF ALICE B. GOODSON, DECEASED
No. 6910SC12
(Filed 2 April 1969)

1. Wills § 21— caveat — presumption of fraud — instructions

In a caveat proceeding brought by children of the testator alleging that the purported will was obtained through the undue influence of testator's daughter, the principal beneficiary, at a time when the testator lacked the mental capacity to make a will, trial court did not err in refusing to charge the jury on the presumption of fraud arising from dealings within a fiduciary relationship, where the evidence was to the effect that the beneficiary had moved to the mother's home under an agreement with the other children that she have the income from the homeplace farm in return for looking after the mother, the beneficiary paid all the expense of the farm and kept the income without recourse or explanation to her mother, and there was no evidence of procurement of the will by the beneficiary.

2. Cancellation of Instruments § 2; Wills § 18— caveat proceedings — presumption of fraud

No presumption of fraud arises out of the parent-child relationship standing alone.

**3. Wills § 21— caveat proceeding — instruction on undue influence**

In caveat proceeding, trial court's instructions on the question of undue influence, which were in substantial compliance with *In re Will of Thompson*, 248 N.C. 588, *held* without error.

**4. Wills § 21— caveat proceeding — undue influence — instructions — G.S. 1-180**

In caveat proceeding, trial court's instructions, when considered contextually, *are held* in substantial compliance with G.S. 1-180 in relating the law of undue influence to the facts of the case.

APPEAL by caveators from *Hobgood, J.*, at the 12 April 1968 Session of WAKE Superior Court.

This was a caveat proceeding, filed by six of the nine children of Alice B. Goodson on 29 March 1966, alleging that the paper writing which purports to be the last will of Alice B. Goodson (the deceased) was executed at a time when the deceased lacked the mental capacity to make a will and that her signature was obtained through the undue influence of her daughter Martha Goodson High Partin (Mrs. Partin), the principal beneficiary.

Answer to the caveat was filed 28 April 1966 by C. M. Kirk, executor, and Mrs. Partin, denying the allegations in the caveat and asking that the paper writing be declared the Last Will and Testament of the deceased.

At trial, the evidence tended to show that the deceased was born 19 June 1880 and that she was married to A. I. Goodson who died in 1943. The caveators testified that shortly thereafter the deceased asked all the children to meet and agree on the one who should come and stay with her. When the children met, Augustus Goodson, a son, was initially selected. However, when Mrs. Partin asked that she be allowed to move in with her mother, it was agreed that she do so and that she have whatever could be made from the homeplace farm as her compensation. Mrs. Partin moved in and lived in the home from that time until the time of the trial.

Each of the caveators testified that in his opinion on 31 October 1961, the date of the execution of the purported will, the deceased lacked the capacity to understand the extent of her property or the effect to her actions in making the purported will or to know her relatives. They based their opinions on various incidents where the deceased had failed to recognize her children, failed to recall how she acquired title to her property, and failed to understand that she had deeded part of her property to her son Marion, thinking it was only a crop allotment lease.

The caveators introduced medical testimony that deceased suffered from cerebral arteriosclerosis, which condition was apparent from 1964 until her death on 6 January 1966. The doctor also testified that such illness develops over the course of several years. There was testimony that Mrs. Partin often locked the deceased in the house and went out to work on the farm and that certain of the caveators could not get in the house and had to converse with the deceased through the window. There was testimony that the deceased and others had remarked on the ill nature of Mrs. Partin.

The evidence indicated that Mrs. Partin took the deceased to the law office of C. M. Kirk in June of 1961, that Mr. Kirk conferred with the deceased in the car, and that a paper writing was executed at that time. On 31 October 1961, the procedure was repeated, the latter paper writing changing the former by adding a bequest of $10 to each child other than Mrs. Partin. The deceased indicated at that time that she feared efforts to break the will. There was also testimony of a paper writing executed in 1953 which made substantial provision for all the children.

The propounder offered testimony tending to show that Mrs. Partin was not in the car at the time the will was executed and that no attempt had been made to influence the judgment of the deceased. In addition, the propounder testified that the deceased possessed the capacity to make a will well past the time the instrument in question was executed. Mrs. Partin testified that she and her husband had operated the farm without substantial outside help, that the deceased had borne none of the expenses, and that the deceased had not received any of the profits other than the comforts of the home. Mrs. Partin testified that she had received no benefit from any income of the deceased.

The court submitted issues of due execution, mental capacity, and undue influence to the jury. The jury found that the will was in all respects the Last Will and Testament of the deceased. From judgment on this verdict, the caveators appealed.

*Yarborough, Blanchard, Tucker & Yarborough by Irvin B. Tucker, Jr., for caveator appellants.*

*Douglass & Douglass by Clyde A. Douglass, II, for propounder appellee.*

Britt, J.

[1] The first question presented is whether the lower court erred in failing to charge the jury on the presumption of fraud arising

from dealings within a fiduciary relationship. The caveators contend that Mrs. Partin was the general agent of the decedent, that the decedent relied upon Mrs. Partin to handle all her business affairs, and that, therefore, the burden was upon the propounder to show that the transaction was open, fair and honest.

[1, 2]  On this point, caveators rely principally on the case of *McNeill v. McNeill*, 223 N.C. 178, 25 S.E. 2d 615. It is clear that no presumption of fraud arises out of the parent-child relationship standing alone. *Walters v. Bridgers*, 251 N.C. 289, 111 S.E. 2d 176; *Gerringer v. Gerringer*, 223 N.C. 818, 28 S.E. 2d 501. As was stated in *Davis v. Davis*, 236 N.C. 208, 72 S.E. 2d 414, we have here "a family relationship, not a fiduciary one." In the *McNeill* case, the beneficiary was not the child of the testatrix but was a cousin. Moreover, the testatrix had executed a written power of attorney to said cousin, Johnnie L. McNeill, and had also deeded large blocks of her property to him for little or no consideration. Also, there was clear evidence that Johnnie L. McNeill had acted as agent for and in behalf of the testatrix in the operation of her farm. In the case at hand, the evidence was that the beneficiary had moved to the deceased's home under an agreement with the other children that she have the income from the homeplace farm in return for staying with and looking after her mother. The evidence was that the beneficiary paid all expenses of said farm and kept the income, without recourse or explanation to the deceased. There was no evidence of procurement of the will by the beneficiary but only of the service and care which a parent might, in the main, expect and desire from her child.

We hold that the evidence of a fiduciary relationship was insufficient to require a charge on the presumption of fraud arising from such a relationship.

[3]  Caveators contend next that the trial court erred in its charge to the jury in defining and explaining undue influence. In their brief, they cite and quote from *In re Will of Thompson*, 248 N.C. 588, 104 S.E. 2d 280. In this opinion by Parker, J. (now C.J.), we find the following:

> "The undue influence which renders a will invalid must be of a kind which operates on the mind of the testator at the very time the will is made, and causes its execution. Page on Wills, Lifetime Ed., Vol. 1, sec. 191, where many cases are cited; 94 C.J.S., Wills, pp. 1071-1073. 'It is not material when the undue influence was exercised, if it was present and operating on the mind of the testator at the time the will was executed.' 57 Am. Jur., Wills, sec. 353.

Undue influence is frequently employed surreptitiously, and is chiefly shown by its results. When the issue of undue influence is raised, the question presented is usually one of the effect of a long course of conduct upon the mind of the testator at the time the will is made, and the evidence by which it is established is usually circumstantial. *In re Will of Lomax,* 226 N.C. 498, 39 S.E. 2d 388; *In re Stephens' Will,* 189 N.C. 267, 126 S.E. 738; *In re Will of Everett,* 153 N.C. 83, 68 S.E. 924."

Although the trial court in the instant case did not charge the exact words quoted from the *Thompson* opinion, we hold that the charge was in substantial compliance and was not prejudicial to the caveators.

**[4]**    Finally, the caveators contend that the charge was not in compliance with G.S. 1-180 because of the failure to relate the law of undue influence to the facts of the case. The record reveals that after defining undue influence, the court enumerated some of the factors which might be considered by the jury in determining whether undue influence was exercised upon the deceased. In so doing, the court set out the factors in terms matching expressly the facts as the jury might have found them. We hold that the charge, considered contextually, was in substantial compliance with the statute.

We conclude that the caveators had a fair trial, free from prejudicial error.

No error.

MALLARD, C.J., and PARKER, J., concur.