QSP, INC., PLAINTIFF v. A. WAYNE HAIR, DEFENDANT

No. COA01-1244

(Filed 6 August 2002)

## 1. Appeal and Error— appealability—denial of preliminary injunction—non-competition agreement—agreement prohibiting disclosure of confidential information—substantial right

Although an appeal of a trial court's ruling on a motion for preliminary injunction is generally an appeal from an interlocutory order, cases involving an alleged breach of a non-competition agreement and an agreement prohibiting disclosure of confidential information affect a substantial right and are therefore immediately appealable.

## 2. Injunction— preliminary—likelihood of success on merits—irreparable loss

The trial court erred by denying plaintiff corporation's motion for a preliminary injunction enjoining defendant from further breaching a confidentiality, no-solicitation, and noncompetition agreement, because: (1) plaintiff has shown a likelihood of success on the merits; and (2) plaintiff has shown it is likely to sustain irreparable loss unless the injunction is issued.

---

**QSP, INC. v. HAIR**

[152 N.C. App. 174 (2002)]

Appeal by plaintiff from order entered 29 June 2001 by Judge Wiley F. Bowen in Cumberland County Superior Court. Heard in the Court of Appeals 10 June 2002.

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by James T. Williams, Jr. and John W. Ormand, III, for plaintiff-appellant.*

*The Yarborough Law Firm, by Garris Neil Yarborough, for defendant-appellee.*

EAGLES, Chief Judge.

On 24 May 2001, QSP filed an action against defendant for breach of a "Confidentiality, No-Solicitation, and Non-Competition Agreement." QSP also filed a motion seeking a temporary restraining order against defendant. The trial court granted QSP's motion for a temporary restraining order that same day. On 30 May 2001, QSP served defendant with a motion for preliminary injunction. After a hearing on 25 June 2001, the Honorable Wiley F. Bowen took the matter under advisement. On 28 June 2001, QSP filed a motion pursuant to N.C. R. Civ. P. 52(a)(2) requesting the trial court to include in its order findings of fact and conclusions of law. On 29 June 2001, the trial court entered its order denying QSP's motion for preliminary injunction without making appropriate findings of fact and conclusions of law as requested by QSP in its Rule 52 motion. QSP appeals.

[1] Appeal of a trial court's ruling on a motion for preliminary injunction is interlocutory. For appellate review to be appropriate, the trial court's ruling must have deprived the appellant of a substantial right that will be lost absent review before final disposition of the case. N.C.G.S. §§ 1-277, 7A-27. In cases involving an alleged breach of a non-competition agreement and an agreement prohibiting disclosure of confidential information, North Carolina appellate courts have routinely reviewed interlocutory court orders both granting and denying preliminary injunctions, holding that substantial rights have been affected. *See, e.g., A.E.P. Industries, Inc. v. McClure,* 308 N.C. 393, 302 S.E.2d 754 (1983); *Iredell Digestive Disease Clinic, P.A. v. Petrozza,* 92 N.C. App. 21, 373 S.E.2d 449 (1988), *aff'd,* 324 N.C. 327, 377 S.E.2d 750 (1989); *Cox v. Dine-A-Mate, Inc.,* 129 N.C. App. 773, 501 S.E.2d 353 (1998); *Masterclean of North Carolina, Inc. v. Guy,* 82 N.C. App. 45, 345 S.E.2d 692 (1986).

Here, QSP asserts that defendant has certain confidential information and trade secrets and was competing in violation of the agreement. Thus, QSP moved the trial court to enter a preliminary injunction (1) prohibiting defendant from using or disclosing QSP's confidential information and trade secrets and (2) prohibiting defendant from soliciting for one year the same customers defendant solicited while working for QSP. At the outset, based on our review of the evidence in the record, we hold that plaintiff would be deprived of a substantial right absent a review prior to a final determination. Accordingly, appellate review is appropriate.

[2] The scope of appellate review of a trial court's grant or denial of a preliminary injunction is essentially *de novo*. *Robins & Weill, Inc. v. Mason*, 70 N.C. App. 537, 540, 320 S.E.2d 693, 696 (1984). "[A]n appellate court is not bound by the [trial court's] findings, but may review and weigh the evidence and find facts for itself." *A.E.P. Indus.*, 308 N.C. at 402, 302 S.E.2d at 760. "[I]n North Carolina, restrictive covenants between an employer and employee are valid and enforceable if they are (1) in writing; (2) made part of a contract of employment; (3) based on valuable consideration; (4) reasonable both as to time and territory; and (5) not against public policy." *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 649-50, 370 S.E.2d 375, 380 (1988).

In considering the propriety of a preliminary injunction, this Court does not determine whether a confidentiality, no-solicitation, and non-competition agreement is in fact enforceable, but reviews the evidence and determines (1) whether plaintiff has met its burden of showing a likelihood of success on the merits and (2) whether plaintiff is likely to sustain irreparable loss unless the injunction is issued. *A.E.P. Indus.*, 308 N.C. at 401, 302 S.E.2d at 759.

I. Findings of Fact.

Based upon our *de novo* review of the evidence contained in the record, we find the following facts: Wayne Hair worked as an independent sales representative for World's Finest Chocolate, Inc. (WFC) for 17 years. WFC organized fund-raising programs and supplied goods (primarily chocolates) for resale by non-profit organizations, primarily schools and churches.

In February 2000, plaintiff QSP purchased from WFC the exclusive rights to distribute WFC's products. QSP also purchased goodwill which consisted of customer relationships, confidential informa-

**QSP, INC. v. HAIR**

[152 N.C. App. 174 (2002)]

tion about contact persons, preferences and requirements of customers, and sales methods that WFC taught its distributors to use in the course of their sales efforts. As part of its agreement with WFC, QSP agreed to offer WFC distributors employment with QSP, contingent upon WFC employees' agreement to QSP's employment conditions.

To introduce WFC's distributors to QSP and to explain the employment opportunity, QSP invited WFC's 200 sales representatives, including defendant, to Atlanta, Georgia, to participate in a three-day informational event from 11 February 2000 to 14 February 2000. During the event, defendant received extensive information about QSP and the terms of QSP's employment offer. On 12 February 2000, QSP formally presented defendant with the opportunity to join QSP's sales force. Defendant received a written employment offer that included a "Confidentiality, No-Solicitation, and Non-Competition Agreement." On 13 February 2000, defendant signed QSP's employment contract and the confidentiality and non-competition agreement. Defendant began working as a representative for QSP on 23 May 2000.

On 3 April 2001, after working for QSP for approximately eleven months, defendant resigned. During the eleven months that defendant was employed with QSP, defendant sold fund-raising products and programs to at least 50 schools or other organizations located in Cumberland, Robeson, Wake, Durham, and Granville counties and generated in excess of $700,000 in gross sales.

Shortly after resigning from QSP, defendant became an independent sales representative for William R. Mink & Co., Inc. (Mink), a competitor of plaintiff. In May 2001, QSP discovered that defendant, on behalf of Mink, had visited and contracted with several schools that defendant had serviced while working for QSP.

II. Conclusions of Law.

In light of these findings of fact and defendant's concessions at oral argument that the issues of territory and duration are not disputed, we first consider whether QSP has met its burden of showing a likelihood of success on the merits. The "Confidentiality, No-Solicitation, and Non-Competition Agreement" was part of a written employment agreement and was voluntarily signed by defendant. The agreement prohibits defendant from competing with QSP for twelve months in five North Carolina counties—Robeson, Wake, Durham, Cumberland, and Granville—and includes a tolling provision that pro-

tects QSP's right to the benefit of the twelve month non-competition period. This provision states:

> [Employee] agree[s] in light of the special nature of QSP's fund-raising business that if [employee] violate[s] this Agreement, appropriate relief by a court requires that the terms of paragraphs 1(a-f) and 3(b) will be extended for a period of twelve (12) months commencing on the date of [employee's] last violation of this Agreement . . . .

These time and territory provisions appear to be reasonable and not unduly oppressive. In February 2000, QSP purchased the exclusive rights to distribute WFC products. QSP's buyout, once effective, would have left defendant unemployed but for QSP's offer of employment to defendant and defendant's subsequent acceptance. This offer, made by QSP on 12 February 2000, was an offer of new employment and therefore constituted valuable consideration.

Pursuant to the employment agreement, defendant expressly agreed that information concerning QSP's accounts, business practices, and know-how was confidential and that defendant would not disclose any of this information to any business in competition with QSP. Defendant resigned from his employment as a QSP sales representative on 3 April 2001. Shortly thereafter, defendant began working as a sales representative for Mink, a QSP competitor. In the court below, QSP introduced evidence which showed that defendant used proprietary information in his role as a salesman for Mink and that defendant had solicited and contracted with several schools that defendant had serviced while working for QSP. Defendant adduced no contradictory evidence. After careful review of the record and the contentions of the parties, we hold that plaintiff has met its burden of showing a likelihood of success on the merits.

We next turn to the issue of whether QSP is likely to sustain irreparable loss unless the injunction is issued. "[I]ntimate knowledge of the business operations or personal association with customers provides an opportunity to [a] . . . former employee . . . to injure the business of the covenantee." *Kuykendall*, 322 N.C. at 649, 370 S.E.2d at 380. In *A.E.P. Industries*, our Supreme Court emphasized that this potential harm warrants injunctive relief:

> "It is clear that if the nature of the employment is such as will bring the employee in personal contact with patrons or cus-

**QSP, INC. v. HAIR**

[152 N.C. App. 174 (2002)]

tomers of the employer, or enable him to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons or customers, enabling him by engaging in a competing business in his own behalf, or for another, to take advantage of such knowledge of or acquaintance with the patrons and customers of his former employer, and thereby gain an unfair advantage, equity will interpose in behalf of the employer and restrain the breach . . . ."

*A.E.P. Industries*, 308 N.C. at 408, 302 S.E.2d at 763 (citation omitted).

Here, the evidence shows that (1) defendant is engaged in the solicitation of QSP's clients and customers as a sales representative for Mink in violation of the Non-Competition Agreement; (2) defendant has misappropriated QSP's confidential information while working for Mink; and (3) as a result of defendant's actions, QSP will suffer irreparable injury if defendant is not restrained from further violating the "Confidentiality, No-Solicitation, and Non-Competition Agreement." Accordingly, we hold that QSP is likely to sustain irreparable loss unless an injunction is issued.

From our review, it is clear that QSP has shown a likelihood of success on the merits and that QSP is likely to sustain irreparable loss unless the injunction is issued. Accordingly, the order of the trial court denying QSP's motion for preliminary injunction is reversed and the case is remanded to the trial court for entry of a preliminary injunction enjoining defendant from further breach of the "Confidentiality, No-Solicitation, and Non-Competition Agreement."

Reversed and remanded.

Judges WALKER and BIGGS concur.