ESTATE OF THOMAS GRAHAM and KAY FRANCES FOX TAYLOR, Plaintiffs v.
LUCILLE MORRISON, JOHN HALLMAN, and LADD MORRISON, Defendants

No. COA03-1673

(Filed 18 January 2005)

**1. Powers of Attorney— conveyance by attorney-in-fact to herself—alleged services as consideration—value compared to value of property**

Plaintiffs' motion for a judgment notwithstanding the verdict should have been granted in an action challenging an attorney-in-fact's conveyance of the principal's property to herself. There was no testimony indicating that the value of the services provided by the attorney-in-fact were comparable to the value of the land, and there was testimony indicating that the land was not conveyed to the attorney-in-fact as compensation for her services.

**2. Powers of Attorney— conveyance of principal's property— no power of gift—transfer not payment for services**

The trial court erroneously denied plaintiffs' motion for a judgment notwithstanding the verdict in an action challenging an attorney-in-fact's conveyance of the principal's home to her son. The power of attorney did not give the attorney-in-fact the power to make gifts, and there was no indication that the transfer was intended to be payment for services.

**3. Powers of Attorney— sale of principal's property—funds used for principal—fiduciary duty—obtaining fair price— no evidence of value**

The trial court properly denied plaintiffs' motion for judgment notwithstanding the verdict on an allegation of conversion by attorney-in-fact arising from her sale of the principal's property to her brother. The power of attorney granted her the authority to sell property for the principal's benefit, and there was testimony that she used the money to hire an attorney to represent the principal in competency proceedings. The attorney-in-fact also had a fiduciary duty to obtain a fair price (not necessarily full value) and there was no evidence of the property's fair market value. Plaintiffs' did not prove breach of fiduciary duty regarding this transaction by a preponderance of the evidence.

**4. Powers of Attorney— deed of trust—beyond authority of attorney-in-fact**

A deed of trust by an attorney-in-fact was remanded for further proceedings where she did not have the power to execute a deed of trust on the property.

**5. Powers of Attorney— attorney-in-fact—transfer of principal's property—breach of fiduciary duty**

The trial court erroneously denied plaintiffs' motion for a judgment notwithstanding the verdict on plaintiffs' claim for breach of fiduciary duty where the attorney-in-fact did not have the power to give the principal's property to herself or her son.

Appeal by plaintiffs from judgment entered 4 April 2003 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 October 2004.

*Thurman, Wilson & Boutwell, P.A., by John C. Snyder, III, for plaintiff-appellants.*

*Lawrence U. Davidson, III for defendant-appellees.*

HUNTER, Judge.

Plaintiffs, Kay Frances Fox Taylor and the Estate of Thomas Graham, present the following issues for our consideration: Whether the trial court erroneously denied their motion for judgment notwithstanding the verdict, because: (I) defendant, Lucille Morrison, made gifts to herself and her son using a power of attorney for Thomas Graham that did not contain an express provision to make gifts; (II) no consideration was given for the gifts of property to Lucille and her son; (III) Lucille converted money for herself from the sale of Graham's real property to pay legal bills and executed a deed of trust for future legal bills; and (IV) Lucille breached her fiduciary duty to Graham by using a power of attorney to give gifts to herself and family members. After careful review of the record and transcripts, we conclude the trial court erroneously denied plaintiffs' motion for judgment notwithstanding the verdict.

Based upon the evidence presented during the trial of this matter, the pertinent facts indicate that Kay Frances Fox Taylor is the daughter of the late Thomas Graham. Lucille Morrison was Graham's niece, and Ladd Morrison was Lucille Morrison's son and Graham's great-nephew. Graham resided in Charlotte, North Carolina, until his death

on 7 August 2001. Lucille Morrison also lived in Charlotte. Taylor lived out of state.

On 31 May 2000, Graham made Lucille Morrison his attorney-in-fact by executing a durable and general power of attorney. Lucille indicated she signed Graham's name to the power of attorney at his request. The power of attorney was notarized and filed in the Mecklenburg County Register of Deeds on 1 June 2000. The power of attorney granted Lucille broad powers and discretion in Graham's affairs. However, the power of attorney did not contain the express authority to make gifts.

On 26 October 2000, Lucille, as attorney-in-fact for Graham, executed a deed granting a portion of Graham's property to herself as grantee. The deed was recorded on 31 October 2000. The real property consisted of 11.92 acres. Prior to execution of the deed, Graham had been negotiating with several developers to sell the property Lucille deeded to herself. Several developers had offered to purchase the property for between $400,000.00 and $700,000.00.

On 5 June 2001, Lucille, as attorney-in-fact for Graham, executed a general warranty deed to her son, Ladd Morrison. By execution of this deed, Ladd became the owner of Graham's home on Coronet Way in Charlotte. On the same date, Lucille, as attorney-in-fact, conveyed Graham's Oakview Terrace property to John Hallman, her brother, for $3,000.00. According to Lucille, this money was used to pay an attorney to defend Graham in a competency proceeding.

On 20 June 2001, Thomas Graham filed a complaint against Lucille Morrison, Ladd Morrison, and John Hallman seeking to have the deeds executed by Lucille voided as gifts outside the authority of the power of attorney. Graham also alleged conversion, breach of fiduciary duty, and neglect. He sought an accounting and asked that the durable power of attorney be voided. After Graham's death on 7 August 2001, an amended complaint was filed on 10 August 2001 substituting the Estate of Thomas Graham as a plaintiff.

On 9 November 2001, plaintiffs filed a motion for partial summary judgment and defendants filed their motion for summary judgment on 7 December 2001. On 25 February 2002, partial summary judgment was granted for plaintiffs, voiding the deeds on the basis that the power of attorney did not specifically authorize gifts. Defendants' motion for summary judgment and plaintiffs' motion for summary judgment on the claim of conversion were respectively denied.

On appeal, this Court in *Estate of Graham v. Morrison*, 156 N.C. App. 154, 576 S.E.2d 355 (2003), reversed the trial court's order voiding the deeds as gifts. We remanded this case for a factual determination of whether the deeds were gifts, or conveyances supported by valuable consideration. *Id.* at 160, 576 S.E.2d at 359. On remand, the jury determined valuable consideration supported the conveyances, that Lucille did not breach her fiduciary duty to Graham by using money of Thomas Graham for her own benefit, and that Lucille did not convert Graham's money for her own benefit. Plaintiffs appeal.

As an initial matter, we address defendants' contention that this action is barred by the doctrine of *res judicata*.

> Under the doctrine of *res judicata*, a final judgment on the merits by a court of competent jurisdiction is conclusive as to rights, questions and facts in issue. Such judgment bars all subsequent actions involving the same issues and the same parties or those in privity with them. . . . The doctrine only applies, however, when a party attempts to litigate the same cause of action after a full opportunity to do so in a prior proceeding.

*Chrisalis Properties, Inc. v. Separate Quarters, Inc.*, 101 N.C. App. 81, 84, 398 S.E.2d 628, 631 (1990) (citations omitted).

Defendants argue that in our prior opinion addressing the appeal of the summary judgment orders, this Court held the deeds at issue did not convey gifts of real property and reinstated ownership to defendants. This was not our holding in *Estate of Graham*. In *Estate of Graham*, we specifically held:

> These deeds are void if the conveyances are determined to be gifts. Lucille's broad power of attorney did not expressly grant her the right to make gifts of real property on behalf of Mr. Graham.
>
> . . .
>
> Genuine issues of material fact exist whether the conveyances were gifts or were transferred for "valuable consideration" as recited in the deeds. We reverse the trial court's grant of summary judgment. The trial court did not reach these issues during the summary judgment hearing.

*Estate of Graham*, 156 N.C. App. at 159, 576 S.E.2d at 358-59. Thus, whether the deeds constituted gifts of real property or were conveyances supported by valuable consideration was one of the issues

ESTATE OF GRAHAM v. MORRISON

[168 N.C. App. 63 (2005)]

to be determined by the jury at trial. Accordingly, plaintiffs' appeal is not barred by the doctrine of *res judicata*.

[1] Plaintiffs first contend the trial court should have granted its motion for judgment notwithstanding the verdict because the evidence shows Lucille Morrison made gifts using a power of attorney that did not contain an express provision to make gifts. Plaintiffs further argue that there was no consideration given for the property deeded to Lucille and Ladd Morrison. Moreover, plaintiffs argue that even if there was some consideration given, the consideration did not constitute full or valuable consideration to overcome the fact that a gift of some significant amount was made in violation of the power of attorney. Thus, plaintiffs contend the gifts to Lucille and her son were in violation of the power of attorney.

> A motion for judgment notwithstanding the verdict is essentially a renewal of an earlier motion for directed verdict. Like a motion for directed verdict, a motion for judgment notwithstanding the verdict tests the legal sufficiency of the evidence to take the case to the jury. The motion for judgment notwithstanding the verdict "shall be granted if it appears that the motion for directed verdict could properly have been granted." G.S. 1A-1, Rule 50(b). Accordingly, the test for determining the sufficiency of the evidence is the same under both motions.

> In considering a motion for judgment notwithstanding the verdict, all the evidence must be considered in the light most favorable to the nonmoving party. The nonmovant is given the benefit of every reasonable inference that may legitimately be drawn from the evidence and all contradictions are resolved in the nonmovant's favor. If there is more than a scintilla of evidence supporting each element of the nonmovant's case, the motion for directed verdict and any subsequent motion for judgment notwithstanding the verdict should be denied.

*Ace Chemical Corp. v. DSI Transports, Inc.*, 115 N.C. App. 237, 241-42, 446 S.E.2d 100, 102-03 (1994) (citations omitted); *see also* N.C. Gen. Stat. 1A-1, Rule 50(b) (2003).

This Court has already determined that the power of attorney held by Lucille Morrison, granting her broad powers over the affairs of Thomas Graham, did not give her the authority to make gifts. *Estate of Graham*, 156 N.C. App. at 157-58, 576 S.E.2d at 358-59. Therefore, this Court remanded to the trial court for a jury determi-

nation of whether the conveyances at issue were supported by valuable consideration.

What constitutes valuable consideration depends upon the context of a particular case. *See Bank v. Evans*, 296 N.C. 374, 378, 250 S.E.2d 231, 234 (1979) (indicating that in a contract dispute, mere inadequacy of price is not sufficient to set aside a contract where the parties have negotiated a bargained-for exchange and there are no allegations of any improprieties). In contrast, where a deed transferring property may have been executed to defraud a creditor, valuable consideration must be a fair and reasonable price. *See id.* In cases where fraud in the procurement of a deed is at issue, the inadequacy of the price received is a factor considered in determining whether fraud occurred. *See McPhaul v. Walters*, 167 N.C. 182, 183-84, 83 S.E. 321, 322 (1914); *Hartly v. Estis-Estis v. Hartly*, 62 N.C. 167 (1866). Although our appellate courts have examined what constitutes valuable consideration in the context of contracts and fraudulent conveyances, we have not determined what constitutes valuable consideration in circumstances where an attorney-in-fact conveys the principal's property to herself, and the attorney-in-fact contends the conveyance was supported by consideration.

Nonetheless, our Supreme Court has indicated that an attorney-in-fact has an obligation to act in the best interests of the principal. *Whitford v. Gaskill*, 345 N.C. 475, 478, 480 S.E.2d 690 692 (1997). The authority to sell and convey the principal's property " 'implies a sale for the benefit of the principal and does not authorize the agent to make a gift of the property, or to convey or transfer it without a present consideration inuring to the principal.' " *Honeycutt v. Farmers & Merchants Bank*, 126 N.C. App. 816, 818, 487 S.E.2d 166, 167 (1997) (citation omitted).

Moreover, " 'in the case of an agent with a power to manage all the principal's property it is sufficient to raise a presumption of fraud when the principal transfers property to the agent. Self dealing by the agent is prohibited.' " *Hutchins v. Dowell*, 138 N.C. App. 673, 677, 531 S.E.2d 900, 903 (2000) (citation omitted); *see also* 3 Am. Jur. 2d *Agency* § 205 (2002) (footnote omitted) (stating "[i]n a transaction between principal and agent in which an agent obtains a benefit, such as a gift, a presumption arises against its validity which the agent must overcome"). "An agent 'can neither purchase from nor sell to the principal' unless the agent, in good faith, fully discloses to the principal all material facts surrounding the transaction, and the principal

consents to the transaction." *Sara Lee Corp. v. Carter*, 129 N.C. App. 464, 470, 500 S.E.2d 732, 736 (1998) (citation omitted), *rev'd in part on other grounds by*, 351 N.C. 27, 519 S.E.2d 308 (1999). "This general rule applies although no positive fraud or unfairness may have been practiced by the agent and although he purchases the property 'at a fair market price, or at the price set by the principal, and even though he was unable to sell to anyone else at the price fixed.' " *Real Estate Exchange & Investors v. Tongue*, 17 N.C. App. 575, 576, 194 S.E.2d 873, 874 (1973).

Thus, we hold that in situations where an attorney-in-fact conveys the principal's property to herself based upon a consideration of alleged services rendered to the principal, the valuable consideration must reflect a fair and reasonable price when compared to the fair market value of the property. *See Morehead v. Harris*, 262 N.C. 330, 338, 137 S.E.2d 174, 182 (1964) (stating "[v]aluable consideration or 'value' is a fair consideration, not necessarily up to full value, but a price paid which would not cause surprise"), and *Hodges v. Wilson*, 165 N.C. 323, 332, 81 S.E. 340, 345 (1914) (citation omitted) (indicating valuable consideration is " 'a fair consideration, not up to the full price, but a price paid which would not cause surprise or make any one exclaim, "He got the property for nothing; there must have been some fraud or contrivance about it" ' ").

Indeed, unlike the situation in which two parties enter a contract after negotiating the terms, the attorney-in-fact has the authority under the statutory durable power of attorney to convey the principal's real property without the input of the principal. Thus, our appellate courts have held the agent can not convey to himself or purchase the principal's property without full disclosure to the principal and the principal's consent. *Sara Lee Corp.*, 129 N.C. App. at 470, 500 S.E.2d at 736. Similarly, our appellate courts have held that a presumption of fraud arises when the principal transfers property to the agent. *See Hutchins*, 138 N.C. App. at 677, 531 S.E.2d at 902-03. It necessarily follows that when the agent transfers the principal's property to herself, a presumption of fraud arises. Furthermore, we have indicated that self-dealing by an agent is prohibited. *Id.* Given these restrictions upon an agent's conduct, we conclude a higher standard for what constitutes valuable consideration must be applied. Accordingly, to withstand the plaintiffs' motion for judgment notwithstanding the verdict, Lucille had to demonstrate that her services rendered to Graham were equal to a fair and reasonable price for the real property conveyed.

ESTATE OF GRAHAM v. MORRISON

[168 N.C. App. 63 (2005)]

As explained in *Estate of Graham*, 156 N.C. App. at 159, 576 S.E.2d at 359 (citation omitted):

> Past consideration or moral obligation is not adequate consideration to support a contract. Services performed by one family member for another, within the unity of the family, are presumptively "rendered in obedience to a moral obligation and without expectation of compensation." "[T]his principle of law does not prevent a parent from compensating a child for such services, and does not render consideration for a compensating conveyance inadequate."

*Id.*

In the cases where the courts have upheld a conveyance based upon the past services given to the grantor, a parent had conveyed the land to a child without the child having any input regarding, or knowledge of, the conveyance. *See Walters v. Bridgers*, 251 N.C. 289, 111 S.E.2d 176 (1959) (indicating the mother told the attorney without any input from her daughter to draft a deed conveying land to three of her seven living heirs), and *Jones v. Saunders*, 254 N.C. 644, 119 S.E.2d 789 (1961) (indicating a father, unbeknownst to his daughter, had a deed drafted conveying his real property to the daughter that cared for him for over twenty years and helped pay his bills). Also, in each of these cases, the familial relationship involved was that of parent and child, and not some other type of familial relationship. Moreover, none of these cases involved a conveyance of a principal's real property by the attorney-in-fact to himself. Rather, in each of these cases, the principal conducted all of the necessary steps to convey the real property to his or her child.[1]

In this case, Lucille gave conflicting testimony regarding the facts surrounding the conveyance of real property to herself. First, she testified the property was transferred to herself to facilitate the sale of the property. Several developers had contacted Graham and offered to purchase the land for between approximately $400,000.00 and

---

1. In this case, Graham could have taken the necessary steps to convey the property to Lucille. At the time of the conveyance to Lucille, Graham's competence had not been questioned. Graham only needed assistance with his daily living and care because both of his legs had been amputated and he was confined to a wheelchair. Thus, Graham could have executed the deed himself or he could have devised the property to Lucille in a will. Moreover, if Lucille believed she had a contractual right to compensation, she could have brought a claim or counterclaim against Graham or his estate. Finally, Lucille could have sought authorization from the clerk of superior court for authority to make gifts of Graham's property that was not inconsistent with the terms of the power of attorney. N.C. Gen. Stat. § 32A-14.10.

$700,000.00. Lucille testified that Graham was trying to sell the property in the Spring of 2000 because he was running out of money and after growing more ill,

> he said that he didn't want to continue with it in his name and he would like to do it in my name, and Uncle Tom agreed to put it in my name, to give it to me so I could do what I was supposed to do, what he wanted me to do.

She further testified that one of the companies wanted the property in her name because they were afraid Graham would become more ill and would not be able to finish the deal. Therefore, in May 2000, Lucille Morrison became Graham's attorney-in-fact and on 26 October 2000, she executed a deed conveying the Sardis Road property to herself. She signed the deed as attorney-in-fact for Thomas Graham. Lucille testified that she executed the 26 October 2000 deed "when [they] were supposed to sell [the property] to [one of the companies]." After the deal with this company fell apart, Lucille found another buyer, entered into a purchase contract, and read the contract to Graham. However, the property was never sold.

Lucille also testified that Graham "agreed to have it put in my name because he wanted to give it to us because we had been doing everything for him, and so that is what he did. He wanted me to do it." Lucille explained that she had taken care of Graham and his late wife Linda during their illnesses. She would take Graham to dialysis and other doctors' appointments, she would make sure he was fed and she renovated his house to make it wheel-chair accessible and habitable. She further explained that she had helped Graham and his late wife with their business affairs for several years because they could not read and write. However, she also testified that she did not ask to be paid for these services, but that "[Graham] always said that he owed me and he knew that he owed me because I had really been his sole supporter at all times." According to Lucille, "[h]e would tell me this all along. How he never had a kid and how I would do more—how I had done more for him than anybody would do for a person like that. I was always there for him." Thus, Lucille essentially testified that while Graham was directing her to sell the Sardis Road property for between $400,000.00 and $700,000.00 because he was running out of money, he was also telling her he wanted her to have the property.

Although Lucille took care of Graham and his wife during their illnesses and helped handle their business affairs, unlike the situation in *Walters* and *Jones*, Graham did not execute the deed to Lucille.

ESTATE OF GRAHAM v. MORRISON

[168 N.C. App. 63 (2005)]

Rather, Lucille utilized her power of attorney to execute the deed to herself. Given that during the time the deed was drafted, Graham was trying to sell the property, and that Lucille testified the deed was drafted to help finalize the sale of Graham's property, the testimony tends to indicate that the land was not conveyed to Lucille as compensation for her past services. Moreover, there was no testimony indicating the value of Lucille's services were comparable to the value of the real property, between $400,000.00 and $700,000.00. Accordingly, we conclude the trial court erroneously denied plaintiffs' motion for judgment notwithstanding the verdict.

[2] Plaintiff has also challenged a conveyance of Graham's home on Coronet Way in Charlotte, North Carolina, to Ladd Morrison, the son of Lucille Morrison. On 5 June 2001, Lucille executed a deed, as attorney in fact for Thomas Graham, which conveyed the property to Ladd. Lucille testified that Ladd had spent over $12,000.00 to improve the condition of the house so Graham could live in it. Ladd paid for windows, paint, supplies, a furnace, and labor. Ladd testified, however, that "[he] was just taking care of [his] family" and that he never expected to get the money back. According to Lucille, Graham told her to give Ladd the property on Coronet Way and she indicated that she was following his instructions. However, there was no indication in the testimony that the conveyance was intended to be payment for services. Thus, this deed must be set aside because this Court has already determined that the power of attorney held by Lucille over Graham's affairs did not give her the power to make gifts. *See Estate of Graham*, 156 N.C. App. at 157-59, 576 S.E.2d at 358-59. Accordingly, the trial court erroneously denied plaintiffs' motion for judgment notwithstanding the verdict.[2]

[3] Next, plaintiffs contend the trial court should have granted its motion for judgment notwithstanding the verdict on the conversion claim. "Conversion is defined as: (1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner." *Di Frega v. Pugliese*, 164 N.C. App. 499, 509, 596 S.E.2d 456, 463 (2004).

Plaintiffs contend Lucille sold property owned by Graham to her brother, John Hallman, for $3,000.00 and used the money to secure an attorney for herself. However, Lucille testified that the money was

2. Ladd could have filed a claim or counterclaim against Graham or his estate if Ladd believed he had a claim for payment of services rendered or for repayment of a loan.

used to retain an attorney to represent Graham in an incompetency proceeding. According to the testimony, on 6 June 2001, Graham was admitted to the hospital. The next day, on 7 June 2001, his daughter filed a petition to have Graham declared incompetent. Upon learning of the petition, Lucille testified she sold the property and retained an attorney to represent herself and Graham at the hearing. The power of attorney granted Lucille the power to sell Graham's real estate and to "perform all and every act or thing, whatsoever requisite or necessary to be done for [Graham's] upkeep, care, and maintenance, and for the management of any property owned by me, as fully, and to all intents and purposes as I might or could do if I were personally present and acting . . . ." The power of attorney also granted Lucille the authority to make contracts, including selling real property for adequate consideration, on Graham's behalf. As Lucille testified that she hired the attorney to represent Graham in the competency hearing, and the power of attorney granted Lucille the authority to take such actions, we conclude the trial court properly denied plaintiffs' motion for judgment notwithstanding the verdict on this particular conversion allegation.

However, as attorney-in-fact over Graham's property, Lucille had a fiduciary obligation to act in the best interests of the principal. *Whitford*, 345 N.C. at 478, 480 S.E.2d at 692. Moreover, the authority to sell and convey the principal's property, " 'implies a sale for the benefit of the principal, and does not authorize the agent to make a gift of the property, or to convey or transfer it without a present consideration inuring to the principal.' " *Honeycutt*, 126 N.C. App. at 818, 487 S.E.2d at 167 (citation omitted). Although Lucille had the authority to sell Graham's property, as Graham's fiduciary, she had an obligation to obtain a price for the property that was comparable to the property's value. As stated, valuable consideration is a fair consideration, not necessarily up to full value, but a price paid which would not cause surprise. *Morehead*, 262 N.C. at 338, 137 S.E.2d at 182. Thus, the failure to obtain valuable consideration for the property may constitute a breach of fiduciary duty. As no evidence of the property's fair market value was presented, however, plaintiffs did not prove by a preponderance of the evidence that Lucille breached her fiduciary duty in regards to this transaction. Therefore, the trial court properly denied plaintiffs' motion for judgment notwithstanding the verdict.

[4] Plaintiffs also contend Lucille executed a deed of trust on land that she deeded to herself for $250,000.00 to cover the

expenses of this action brought by Thomas Graham, initially, and his daughter. Lucille testified that she did not have any money to defend this present action. Therefore, she executed a $250,000.00 deed of trust on the property she deeded to herself on 26 October 2000. The grantee under the deed of trust was her attorney in this action. Lucille testified that the execution of the deed of trust was not done for Graham's benefit. As we have already concluded the trial court should have granted plaintiffs' motion for judgment notwithstanding the verdict on plaintiffs' claim to set aside the deed conveying the 11.92 acres to Lucille, Lucille did not have any power to execute a deed of trust on this property. Accordingly, we remand to the trial court for further proceedings to determine the proper remedy regarding the deed of trust.

[5] Finally, plaintiffs contend the trial court erroneously denied its motion for judgment notwithstanding the verdict on its breach of fiduciary duty claim.

Under well-established principles of North Carolina agency law:

"An agent is a fiduciary with respect to matters within the scope of his agency. In an agency relationship, at least in the case of an agent with a power to manage all the principal's property, it is sufficient to raise a presumption of fraud when the principal transfers property to the agent. Self dealing by the agent is prohibited."

Hutchins, 138 N.C. App. at 677, 531 S.E.2d at 902-03 (citation omitted) (indicating the relationship created by a power of attorney between the attorney-in-fact and the principal is fiduciary in nature); see also N.C. Gen. Stat. § 32A-8 (2003). The fiduciary relationship " 'implies that the principal has placed trust or confidence in the agent, and the agent or employee is bound to the exercise of the utmost good faith, loyalty, and honesty toward his principal or employer.' " Sara Lee Corp., 129 N.C. App. at 470, 500 S.E.2d at 736 (citation omitted). Thus, "an attorney-in-fact is presumed to act in the best interests of the principal." Whitford, 345 N.C. at 478, 480 S.E.2d at 692.

In this case, Lucille did not have authority under the power of attorney to give Graham's property to herself or her son. Therefore, she breached the fiduciary duty owed to Graham. Accordingly, the trial court erroneously denied plaintiffs' motion for judgment notwithstanding the verdict on plaintiffs' claim for breach of fidu-

ciary duty. Therefore, we remand this cause to the trial court for a determination of damages, if any, in light of this opinion.

In sum, the trial court should have granted plaintiffs' motion for judgment notwithstanding the verdict on their claims to have the deeds to Lucille Morrison and Ladd Morrison set aside and on the breach of fiduciary duty claim. The trial court correctly denied the motion for judgment notwithstanding the verdict on the conversion claim based upon the sale of property to John Hallman. Finally, the deed of trust on the 11.92 acres must be set aside. Affirmed in part, reversed and remanded in part.

Judges WYNN and THORNBURG concur.

Judge Thornburg concurred in this opinion prior to 31 December 2004.