Amerigas Propane, LP v. Coffey, 2014 NCBC 4.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 11778

AMERIGAS PROPANE, LP and )
AMERIGAS PROPANE, INC., )
            Plaintiffs )
             )
          v. )
             )
ERMON CLARK COFFEY and MARSH )
L.P. GAS, INC., )

**ORDER ON MOTION
FOR PRELIMINARY
INJUNCTION**

THIS CAUSE, designated a complex business case by Order of the Chief Justice of the North Carolina Supreme Court pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, is before the court on Plaintiffs' Motion for Preliminary Injunction ("Motion"), pursuant to Rule 65 of the North Carolina Rules of Procedure ("Rule(s)"); and

THE COURT, having considered the Motion, briefs in support of and in opposition to the Motion, submissions and arguments of counsel and appropriate matters of record, FINDS and CONCLUDES as follows:

FINDINGS OF FACT[1]

1.    AmeriGas Partners, L.P. is a publicly traded Delaware limited partnership. Plaintiff AmeriGas Propane, Inc., a Pennsylvania corporation, is the General Partner of both AmeriGas Partners, L.P. and Plaintiff AmeriGas Propane, L.P., a Delaware limited partnership.[2]

---

[1] The factual findings are for the limited purpose of determining the Motion.
[2] Konowalcyzk Aff. ¶ 2; Woodward Aff. ¶¶ 2-4.

2.      AmeriGas Partners, L.P. acquired Heritage Operating, L.P., Heritage GP, LLC, and their subsidiaries and certain affiliates ("Heritage") on January 12, 2012, through a Contribution and Redemption Agreement ("Contribution Agreement").[3] Through the Contribution Agreement, AmeriGas Partners, L.P. acquired all outstanding and issued equity interests in Heritage, which were then transferred to AmeriGas Propane, L.P.  Heritage merged into AmeriGas Propane on July 1, 2013 (hereinafter, the "Acquisition").[4]  The Heritage business territory that is material to this litigation is located primarily in the area of Madison County, North Carolina.

3.      As part of the Contribution Agreement, AmeriGas Partners, L.P. agreed to make all employees of the acquired companies eligible for certain AmeriGas benefits, including the AmeriGas 401(k) plan, give credit for certain benefits accrued through Heritage and guarantee that Heritage employees would not have their pay docked for one year after the close of the transaction.[5]  AmeriGas did not formally fire and rehire any of the Heritage employees that came to work for AmeriGas as part of the Contribution Agreement.[6]

4.      Defendant Ermon Clark Coffey ("Coffey") worked for Heritage in its Marshall, Madison County, North Carolina office at the time of the Acquisition.[7]  Coffey had been employed by Heritage as a Delivery Representative in the Marshall area for approximately eleven years before the Acquisition.[8]  After the Acquisition, Coffey's duties and interactions with customers remained substantially the same.  As part of his

---

[3] Konowalczyk Aff. ¶ 3; Woodward Aff. ¶ 5; Ex. B to Woodward Aff. (Contribution Agreement).
[4] Woodward Aff. ¶¶ 5-6; Contribution Agreement.
[5] Konowalczyk Aff. ¶ 5; Contribution Agreement § 5.24.
[6] Def. Coffey Resp. Pls.' Mot. Prelim. Inj. ("Coffey Br.") 10-12.
[7] Ex. 1 to Pls.' Reply Br. Supp. Mot. Prelim. Inj. ("Shockley Aff.") ¶ 3.
[8] *Id.*; Br. Supp. Mot. Prelim. Inj. ("AmeriGas Br.") 3.

regular job duties, both before and after the Acquisition, Coffey had knowledge of and access to certain information about his employer's business dealings, including the names, addresses and price rates for Heritage/AmeriGas customers of the Marshall Office.[9] Prior to the Acquisition, Coffey was not subject to any non-competition or non-solicitation contractual agreements with Heritage.

5. On January 12, 2012, the closing day of the Acquisition, Coffey signed a Confidentiality and Post-Employment Agreement ("Post-Employment Agreement") with AmeriGas. The Post-Employment Agreement defines "AmeriGas" to include "Heritage Operating, L.P., Heritage GP, LLC, Titan Energy Partners, L.P., Titan Energy GP, LLC and their respective subsidiaries, partnerships and affiliates (collectively referred to herein, along with AmeriGas Partners, L.P. and AmeriGas Propane, L.P. and their subsidiaries, partnerships and affiliates as 'AmeriGas')."[10]

6. The Post-Employment Agreement contains two substantive provisions that are relevant to the Motion:

(a) Paragraph C.3, captioned "Confidential Information and AmeriGas Property," provides that Coffey will protect Confidential Information, defined in Paragraph C.2 to include business and marketing plans; past, present and prospective customer identities and gas usage patterns; pricing and marketing practices; financial information and any strategic plans.[11]

(b) Paragraph C.4 contains a two year non-solicitation provision that prohibits Coffey from "directly or indirectly solicit[ing] the business of any

---

[9] Shockley Aff. ¶ 10-11; AmeriGas Br. 4.
[10] Ex. 6 to AmeriGas Br. (Post-Employment Agreement) ¶ A.
[11] *Id.* ¶ C.

AmeriGas Customer" or "directly or indirectly sell[ing] or provid[ing] propane or any other goods or services" to a customer supplied by AmeriGas as of Coffey's termination date. The term "AmeriGas Customer" is defined to include "any customer which is located within a fifty aerial mile radius of any AmeriGas District Office where [Coffey] worked during the two-year period prior to the termination" of Coffey's termination date.[12]

7.     The enumerated consideration for the Post-Employment Agreement included Coffey's "initial employment . . . continued employment . . . promotion . . . incentive compensation payment; and/or . . . increase in compensation."[13]

8.     In support of the Motion, Plaintiffs have offered evidence that Coffey received "new benefits" as part of his "new employment," specifically that he became eligible for bonuses and wage increases as consideration for the Post-Employment Agreement, and that he received a raise in October 2012 and a bonus in January 2013.[14]

9.     In opposition to the Motion, Coffey has offered evidence that the benefits he received from AmeriGas in purported consideration for this Post-Employment Agreement were no different from those that he had been receiving as an employee of Heritage, and that his job responsibilities and benefits did not change.[15] For example, Coffey continued to receive health insurance, a 401(k) plan and the same amount of

---

[12] *Id.* The third provision in paragraph C.4 places restrictions on Coffey's ability to interfere with the employment of other AmeriGas employees, but Plaintiffs have not requested relief based on this provision. AmeriGas Br. 1-2.
[13] Post-Employment Agreement ¶ C.
[14] AmeriGas Br. 5-6; Ex. 5 to AmeriGas Br. ("Second Ranson Aff.") ¶ 2.
[15] Coffey Br. 10; Ex. E to Coffey Br. ("Coffey Aff.") ¶ 6.

pay, and continued to be eligible for periodic bonuses as he had been in the past.[16] The employees transitioned from Heritage to AmeriGas immediately became eligible for AmeriGas benefits, rather than having to wait a certain amount of time as is typically required of new AmeriGas employees.[17]

10.     The court finds that the benefits and job responsibilities Coffey received from AmeriGas upon signing the Post-Employment Agreement were not materially different from those he had been receiving as an employee of Heritage.[18]

11.     Coffey was fired from AmeriGas on May 3, 2013. On May 20, 2013, he began to work for Defendant Marsh L.P. Gas, Inc. ("Marsh"), a Tennessee corporation that competes with AmeriGas in the area around Marshall.[19]  Plaintiffs contend that Coffey and Marsh have been using the confidential information that Coffey acquired in the course of his employment with Heritage, and later AmeriGas, in contravention of the Post-Employment Agreement.[20]  Plaintiffs request a preliminary injunction enjoining Defendants from breaching the confidentiality and non-solicitation provisions ("Restrictive Provisions") of the Post-Employment Agreement.[21]

12.     The parties have been proceeding under a Stipulated Consent Protective Order, entered by this court on October 7, 2013.  The Motion has been briefed and argued and is ripe for determination.

---

[16] *Id.*
[17] Holland Dep. 29:8-15.
[18] Coffey Br. 10; Ex. E to Coffey Br. ("Coffey Aff.") ¶ 6.
[19] Def. Marsh L.P. Gas, Inc.'s Mem. Opp. Pls.' Mot. Prelim. Inj. & Supp. Marsh's Mot. Dismiss 1.
[20] Am. Compl. ¶2.
[21] Mot. Prelim. Inj. 1-2.

## CONCLUSIONS OF LAW

1.      A preliminary injunction is an extraordinary measure that "will not be lightly granted." *Travenol Lab., Inc. v. Turner*, 30 N.C. App. 686, 692 (1976) (citation omitted). A plaintiff must show "a likelihood of success on the merits of his case and . . . [that] plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of his rights during the course of litigation." *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 466 (2003) (citations omitted). The movant bears the burden of establishing the right to a preliminary injunction. *Pruitt v. Williams*, 288 N.C. 368, 372 (1975).

2.      Defendant Coffey contends that the Post-Employment Agreement was not supported by sufficient consideration and that the Restrictive Provisions relied upon by Plaintiffs therefore are not enforceable against him. Plaintiffs contend to the contrary. As a threshold matter, it is clear that if there did not exist sufficient consideration to support the Post-Employment Agreement, Plaintiffs will fail in establishing a likelihood of success on the merits of their claims against Coffey and further analysis of the Plaintiffs' claims would not be necessary.

### Consideration

3.      For any contract to be enforceable, the parties must have provided consideration in support of the promises given. "A mere promise, without more, is unenforceable." *Inv. Prop. of Asheville, Inc. v. Norburn*, 281 N.C. 191, 195 (1972); *see also Duncan v. Duncan*, 147 N.C. App. 152, 155 (2001). Such consideration is a key element of restrictive covenants in employment contracts.

4.     Although an offer of employment may serve as consideration for a restrictive employment provision, generally this will only work if (a) the employment agreement is signed at the beginning of the employment relationship or (b) if some new material consideration is provided.  *See Estate of Graham v. Morrison*, 168 N.C. App. 63, 70 (2005) ("Past consideration . . . is not adequate consideration to support a contract." (citation omitted)); *see also Forrest Paschal Machinery Co. v. Milholen*, 27 N.C. App. 678, 686-687 (1975) ("[W]hen the relationship of employer and employee is already established without a restrictive covenant, any agreement thereafter not to compete must be in the nature of a new contract based upon a new consideration." (citations omitted) (internal quotation marks omitted)).  Thus, signing a contract in exchange for continuing an employment relationship, without more, will not suffice as consideration.

5.     As such, an employment contract signed at the time of a business acquisition may only use employment with the acquiring company as consideration if the old employment relationship is deemed terminated as a result of the transaction.  In this regard, North Carolina courts previously have stated that acquisition of another company by asset purchase will act as a termination of existing employment relationships, and existing employees of the acquired business do not necessarily become employees of the acquiring entity.  *See, e.g., Calhoun v. WHA Med. Clinic, PLLC,* 178 N.C. App. 585, 597 (2006) (citing *QSP v. Hair*, 152 N.C. App. 174 (2002)); *see also Better Bus. Forms & Prods., Inc. v. Craver*, 2007 NCBC 34 (2007) ("[W]hen an employer sells its assets . . . the employment relationship has been terminated." *Id.* ¶ 38.).  Depending on the circumstances of the particular acquisition, the new

employment relationship may serve as consideration. *See Calhoun*, 178 N.C. App. at 588-89, 597 (finding that an asset purchase followed by the execution of new employment contracts provided sufficient consideration for restrictive covenants protecting the acquiring company); *see also QSP*, 152 N.C. App. at 178 ("QSP's [asset] buyout, once effective, would have left defendant unemployed but for QSP's offer of employment to defendant and defendant's subsequent acceptance. This offer . . . was an offer of new employment and therefore constituted valuable consideration.").

6.      On the other hand, acquisition of a business through a purchase of stock or other equity, which results in the purchase of ownership interests instead of specific assets, will not automatically terminate existing employment relationships and therefore ordinarily will not constitute new employment for purposes of consideration. *See Covenant Equip. Corp. v. Forklift Pro, Inc.*, 2008 NCBC 10, ¶ 42, n.11.  In the instant case, Plaintiffs purchased the Heritage business through an equity acquisition, a procedure akin to a stock purchase.  Plaintiffs have not proffered sufficient evidence to support a conclusion that the Acquisition, as structured, terminated Coffey's employment with Heritage.  As a result, the court cannot conclude that the Acquisition formed the basis for new employment as consideration for Coffey's Post-Employment Agreement.

7.      Finally, Plaintiffs and Defendants argue contradictory facts regarding the existence of any consideration apart from the employment itself.[22]  Plaintiffs contend that Coffey became eligible for "new benefits" and raises in exchange for signing the Post-Employment Agreement.[23]  However, apart from an assertion that signing the

---

[22] See FINDINGS 8, 9 and 10 above.
[23] AmeriGas Br. 5-6.

Post-Employment Agreement made Coffey eligible for bonuses and wage increases,[24] Plaintiffs have not convincingly demonstrated that these "new" benefits are materially different from the benefits that Coffey received during his employment with Heritage.[25] *See Mastrom, Inc. v. Warren*, 18 N.C. App. 199 (1973) (concluding that eligibility for raises, which would be based on the employer's discretion, provided insufficient consideration to support a covenant not to compete). In fact, the Contribution Agreement contains promises from AmeriGas that acquired employees will not have their wages or salaries decreased for a period of one year, that these employees will be credited for contributions made to benefit plans prior to the acquisition and that accumulated vacation time shall carry over.[26] If anything, this at least inferentially supports the proposition that benefits remained the same during the transition from Heritage to AmeriGas.[27]

8.      Based on the record before it, the court is unable to conclude that Plaintiffs have successfully demonstrated a likelihood of success on the merits of the

---

[24] *Id.* 5; Second Ranson Aff. ¶ 2; Holland Dep. 64:3-11.
[25] *See* Coffey Br. 10; Coffey Aff. ¶ 6.
[26] Contribution Agreement § 5.24.
[27] The Post-Employment Agreement signed by Coffey restricts his ability to solicit or sell to customers of AmeriGas. Plaintiffs, citing *Aeroflow, Inc. v. Arias*, 2011 NCBC 20, contend that in analyzing the issue of consideration the court should apply a lower standard of scrutiny to the non-solicitation clause than would be applied to a non-competition clause. It is true that the court in *Aeroflow* observes that "while the elements are the same for the two covenants, non-solicitation agreements are more easily enforced." (citing generally *Asheboro Paper and Packaging, Inc. v. Dickinson*, 599 F. Supp. 2d 664 (M.D.N.C. 2009)). Defendants contend that such a distinction makes no difference here. Rather, they argue that the non-solicitation language of the Post-Employment Agreement in substance is the same as a non-compete agreement and that the same standards of proof therefore should apply to both. Regardless of these respective arguments, in the final analysis the court cannot conclude from the evidence before it that Plaintiffs have demonstrated a likelihood of success on establishing the element of consideration for purposes of enforcing any valid employment contract. Consequently, further analysis of whether there is a material difference in the consideration required to support a non-competition clause and a non-solicitation clause is not necessary.

element of consideration required in proof of their claims.  The Motion therefore should be denied.

NOW THEREFORE, based upon the foregoing FINDINGS and CONCLUSIONS, it is ORDERED:

1.     The Motion is DENIED.

2.     The Consent Temporary Restraining Order entered in this matter is DISSOLVED.

This the 11th day of February, 2014.